CITY OF LA GRANGE v. BROWN et al.

(Court of Civil Appeals of Texas. Austin. Oct. 29, 1913. Rehearing Denied Dec. 3, 1913.)

1. DEDICATION (§ 37*) — ACCEPTANCE—WHAT CONSTITUTES.

Where the streets in a subdivision were dedicated to the public, the use of the streets by the public, and the removal of gravel therefrom by the city, under the claim that they were a public street, is sufficient to show acceptance of the dedication, even though the streets were not always maintained in a fit condition for travel.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 73, 74; Dec. Dig. § 37.*]

2. DEDICATION (§ 63*) — STREETS—ABANDONMENT.

Mere nonuser or delay in the improvement of a street, so that parts of it became practically impassable, and were not used by travelers, is insufficient to establish an abandonment by the city of that portion of the street, where it was a part of the general street system which was dedicated in laying out a subdivision.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 103–106; Dec. Dig. § 63.*]

3. MUNICIPAL CORPORATIONS (§ 663*) — STREETS—CARE FOR STREETS.

Even though the abutting owner owns the fee of the street, the city is entitled to remove soil or gravel therefrom when necessary to properly grade it, and to use the gravel or soil in improving the streets in another locality.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1438–1440; Dec. Dig. § 663.*]

4. MUNICIPAL CORPORATIONS (§ 663*) — STREETS—IMPROVEMENT.

As Rev. Civ. St. 1911, art. 769, expressly authorizes cities owning waterworks to improve a highway to their plants even though they be without the corporate limits, a city may use gravel and soil, removed from a street within its corporate limits, for the purpose of improving the highway to its water plant.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1438–1440; Dec. Dig. § 663.*]

Appeal from District Court, Fayette County; Frank S. Roberts, Judge.

Suit by A. J. Brown and others against the City of La Grange. From the judgment,

defendant appeals, and plaintiffs prosecute a cross-appeal. Affirmed in part, and in part reversed and rendered.

L. D. Brown, of La Grange, for appellant. John T. Duncan, of La Grange, for appellees.

KEY, C. J. This is an injunction suit, the nature and result of which are sufficiently indicated by the trial judge's findings of fact and conclusions of law, which are as follows:

"Findings of Fact.

"I find that the original town tract of La Grange was laid out into streets, blocks, and alleys about the year 1838, and I find that as an addition to the original town tract of La Grange W. W. Ligon and N. W. Faison laid out on the north side of La Grange what is known as the Faison & Ligon addition of the town of La Grange, and I find that lots 1, 2, 3, and 4 and lot 6 in block 504 in the Faison & Ligon addition belong to the plaintiffs herein, and that they have succeeded to whatever rights the original proprietors, to wit, Faison & Ligon, had in and to said lots. I find that Washington street was a street in the original town tract, and that when the Faison & Ligon addition was laid out it was projected through said addition, and terminated at the north boundary of said town. I find that lots 1, 2, 3, and 4, in block 504, abut upon the east side of Washington street, and I find that plaintiffs own block No. 503, and it abuts upon the east side of Washington street. I find that all property lying opposite blocks 503 and 504, and on the west side of Washington street, lie outside of the town of La Grange, and that there are no blocks or lots in said town lying on the west side of Washington street, and opposite blocks 503 and 504. I find that the Faison & Ligon addition to the town of La Grange was laid out into blocks, lots, streets, and alleys about the year 1854, and that said streets and alleys were mapped and platted and dedicated to the public. I find that about the year 1856 the city of La Grange was incorporated by an act of the Legislature, and has remained an incorporated town ever since said date, and is now incorporated, but I find that about the year 1879 or 1880, it abandoned its Legislature charter and adopted the charter which is provided for cities and towns of 1,000 inhabitants and over, as set out in the Revised Statutes of the state of Texas. I find that Washington street is 60 feet in width, and that all streets running north and south are of similar width. I find that the streets running east and west through the Faison & Ligon addition are 30 feet in width, and none of these have been opened through plaintiff's property by the city. I find that the lots in the Faison & Ligon addition are 160 feet in length and 91 feet in width. I find

that the blocks in the Faison & Ligon addition are 320 feet long by 364 feet in width. I find that North Line street is the northernmost street running east and west in the town of La Grange and in the Faison & Ligon addition. I find that its west end abuts upon Washington street, and that it also abuts upon lot 4 belonging to these plaintiffs in block 504 for a distance of 160 feet, and I find that while said west end of said street was laid out and dedicated in 1854, and if accepted it has never been worked, used, or traversed by the city of La Grange for street purposes, I am of opinion the evidence shows, and I find, that it was abandoned by the city, and I find that it has reverted to the plaintiffs, who are the owners of the lot No. 4 which is adjacent to and abutting upon said street.

"I find that the defendant has removed gravel from lot No. 4 belonging to the plaintiffs, and also removed gravel from the abandoned portion of the west end of North Line street, and that they were removing it at the time that this writ of injunction was applied for and granted, and also that said gravel was being removed from with (within) the city limits of La Grange, and was being carried and deposited in a roadway outside of the city limits of La Grange, and leading from the power house and the waterworks of the city to the city of La Grange, which was owned by the city of La Grange. I find that, for the purpose of improving the north end of Washington street and making it more traversable, the defendant has removed gravel, earth, and material, and has removed it to other places and used it in other portions of the city for public purposes, and without compensation to the plaintiffs, and that they are likely to continue to do the same hereafter; that the gravel, earth, and material in that part of Washington street upon which plaintiffs' property abuts, and over which the defendant has an easement or right of way, is valuable and merchantable and salable and has a market value, and I find that the plaintiffs have a fee-simple title to all that portion of Washington street upon which block 503 abuts, and upon which lots 1, 2, 3, and 4 abut, but such fee-simple title is subject to the easement or right to pass and repass by the defendant; that the defendant owns no title to the soil, but only a right to pass and repass, repair and maintain said street for use of the public; that Washington street has been dedicated to and accepted by the city of La Grange.

"Conclusions of Law.

"As a matter of law, I find that the plaintiffs are entitled to a perpetuation of their preliminary injunction in so far as it prohibits the defendant from removing gravel from their lots, and in so far as it prohibits the defendant from removing gravel from the west end of North Line street which abuts upon and lies adjacent to the lots of plaintiffs.

"I hold that the defendant, by virtue of its corporation, is entitled under the law to improve the north end of Washington street in order to make the same traversable and more useful to the traveling public, and I find as a matter of law that the defendant has the right to remove the excess gravel and material, etc., from said street, and to carry it to any portion of the city and use it on the streets of the city without compensation to the plaintiffs pursuant to a general plan of street improvement. I find that the plaintiffs are entitled to recover all costs in this behalf expended, and I direct that judgment be entered according."

In pursuance of the foregoing findings and conclusions, judgment was rendered perpetually restraining the city of La Grange from removing gravel from the property belonging to the plaintiffs, and from that portion of North Line street upon which the plaintiffs' property abuts, and which is designated as lot 4 in block 504. But the temporary injunction which had previously been issued, restraining the city of La Grange from removing gravel or dirt from Washington street where it abuts upon plaintiffs' property was dissolved. The city of La Grange has prosecuted an appeal, and is complaining only of that portion of the judgment which relates to North Line street; and the plaintiffs, by cross-assignment of error, are complaining of that portion which relates to Washington street.

Opinion.

[1, 2] 1. The questions dealt with in this opinion are presented by proper assignments, and we will now proceed to a consideration of those questions. Counsel for appellant contends, and we sustain the contention, that the trial court committed error in finding and holding that the city had not accepted the dedication of North Line street, and, if it had been accepted, that it was subsequently abandoned. It is not denied, and the undisputed proof shows, that the street referred to, as well as all others in the Faison & Ligon addition, was dedicated to the public in 1854; and, while no formal acceptance was shown, the proof disclosed such use of the street referred to by the city and the public as constituted an acceptance. The very fact that the city was removing gravel from that street, claiming the right to do so because of its being a public street, was a sufficient evidence of an acceptance of the dedication. But, in addition to that, it was shown that the greater portion of the street was used by the public as a highway. And what has been said in reference to the question of acceptance virtually disposes of the question of abandonment. The trial court seems to have been of the opinion that because it was not shown that that portion of

North Line street which abuts upon appellee's property had ever been worked by the city, and as it was shown that there was but little travel on that part of the street, and as a small portion of it was practically impassable, thereby causing travel to diverge and go around that portion, that therefore that portion of the street had been abandoned. In that holding we think the trial court fell into error.

"In determining whether a highway has been abandoned, it is proper to consider the mode in which the abutters and the public acquired their rights, as well as what the necessity and convenience brought about by subsequent progress and growth may require. Roads and streets are frequently laid out or dedicated with reference to future requirements, as well as with reference to the existing condition of things, and it is not just to assume that, because all of the way is not used by the public or by the abutters, it has been abandoned." Elliott on Roads & Streets, p. 660.

"But except where it is otherwise provided by statute, mere nonuser by the public, or the payment of taxes on such property by an individual, or delay in opening or improving the street, or a lease of the street, or permitting a steam railroad to occupy a part of the street, or continued encroachments on the streets by structures, or the inclosure of the street, or a part thereof, is ordinarily not sufficient of itself to show an abandonment." 28 Cyc. 841, 842.

In Reilly v. City of Racine, 51 Wis. 526, 8 N. W. 417, it was said: "Until the time arrives when any street or part of a street is required for actual public use, and where the public authorities may be properly called upon to open it for the public use, no mere nonuser, of any length of time, will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public."

[3] 2. But appellees present the contention that, although North Line street may have been a public street, and may not have been abandoned, as was the condition as to Washington street, the city owns nothing but an easement, which is the right to use the land as a public highway, and that the fee remains in appellees; and therefore it is contended, as a necessary corollary, and more particularly because the Constitution of this state prohibits the taking of private property for a public use without compensation, that the city of La Grange had no authority to remove gravel or soil from either Washington or North Line street where those streets abutted upon appellees' property, and use the same for the purpose of improving other streets not abutting upon appellees' property, and one of which streets was not within the corporate limits of the city. There is some plausibility in the contention referred to, but, after due considera-

tion, we have reached the conclusion that it is not in fact correct, and that the correct rule is that when a street, or other highway, has been legally established, the officer or governing body charged with the duty of opening up, constructing, and maintaining such street or highway has the right to remove soil, gravel, and other like material from one part of such street or highway to another portion of that or some other street or highway, for the purpose of constructing or maintaining the latter; and our views upon the subject are so well expressed by the Supreme Court of Connecticut in the case of City of New Haven v. Sargent, 38 Conn. 50, 9 Am. Rep. 360, that we copy as follows from, the opinion of the court in that case:

"It is apparent in this case that the real question is whether the city of New Haven has a right, as against an adjoining proprietor, to take soil from one street, in the network of streets in one particular part of the city, and use it in another street of that network near, but not directly connected with, the street from which the soil is taken, for the purpose of making and grading such other street; such soil being reasonably necessary for that purpose. Whether, in other words, the city has a legal and exclusive right, as against the respondent, to carry the soil from in front of his land (which must necessarily be removed by some one in grading the street), and deposit it in a depression in Derby avenue for the necessary purpose of raising that avenue up to a conforming grade. Whenever the performance of a public duty is imposed upon any person or corporation, the powers necessary for its full performance are impliedly, if not expressly and specifically, given. The duty of laying out, making, and maintaining public highways has been imposed upon the towns in which they are situate. In relation to the laying out of highways their powers and duties are expressly prescribed, but in relating to making and maintaining them their powers are not prescribed, but are implied, and are commensurate with the duty imposed. We must look, then, at the character of the duty, and see what powers are necessary for its performance.

"There has never been in our history a statutory provision prescribing the manner in which highways should be made. Nor has there been any provision in respect to the material of which to make them. By immemorial usage material has been taken for their construction within the limits of the highways of the town. Hills have been excavated and swamps and valleys filled up with the material taken from the excavation, and material existing in excess at one place has been taken to another where it was deficient. These things and many more have been done from the necessity of the case and the nature of the duty, according to the discretion of the officers appointed to do them; and, where they have acted reasonably, their

power has never been successfully questioned. The inference derivable from the silence of the statute in relation to the manner in which material was to be obtained for the construction of the highways, from the immemorial usage in relation to it, and the necessity in which it originated, and from whatever judicial decision we have respecting it, is very clearly that it has always been contemplated and understood by the General Assembly and the public that material for the construction of highways was to be taken within their limits, and might be removed from any place where unnecessary to any place where its use was necessary, without regard to the rights of adjoining proprietors, if the necessity was a reasonable one, and the power was exercised in a reasonable manner. So, too, in relation to the manner in which highways should be maintained and repaired, and the places from which material should be obtained for that purpose, the statutes have been silent. In 1643 the towns were directed to appoint surveyors of highway to 'mend' them, and the surveyors were authorized to 'call out for that purpose every team and person fit for labor.' No provision was made as to the manner in which material was to be obtained, or the extent to which the ways should be mended. That statute was extended in the Code of 1650, and a preamble added as follows:

" 'Whereas the maintaineing of highwayes in a fitt posture for passage, according to the severall occassions that occure, is not onely necessary for the comfort and safety of man and beast, but tends to the profitt and advantage of any people, in the issue,—

" 'It is thought fitt and ordered' etc.

"This quaint preamble does not *prescribe* the manner in which highways are to be maintained, but it recognizes the principles which should govern, and have ever since governed, the legislation of the state and the officers of the towns in the maintenance of them. These principles contemplated their maintenance in a 'fit posture for passage according to the several occasions that should occur,' not only 'for the comfort of man and beast,' but for 'the profit and advantage of the people,' and therefore contemplated all such improvements in structure and grade as 'occasions' occurring in consequence of the advancement and growth of the country, and particularly of populous and growing cities, should make necessary. At a subsequent revision this preamble was dropped, probably because thought unnecessary, and because preambles were usually omitted when the laws were digested, and the statute was silent on the subject until the Revision of 1821, when it was remodeled, and the present provision inserted, requiring the towns to keep their highways 'in good and sufficient repair.' The same usage in relation to the taking of material from any part of the highways, and using it in any other place in the highways, without regard to any of the supposed rights of adjoining proprietors, originating in the same necessity, has existed in respect to the maintenance of highways, as to their construction, and the same inference may be drawn from it.

"Railroads are usually authorized to take additional land outside of their limits for the purpose of obtaining material for the construction of their roads, because it is deemed possible that more material may be required than can be readily obtained within their prescribed limits. No such provision has ever been made in favor of towns, and it is perfectly obvious that the Legislature and the towns have considered the right and the power to take material where it could be found within the limits of the highways, and use it in any other place where it was necessary to use it, and where it was not to be found, as a right and power necessarily incident to the easement, and adequate to the wants of the public in respect to such material.

"It seems clear to a majority of the court, upon this review of the statutes and usages of the state in regard to the making of highways, that the power of the officers of the town to remove material from place to place upon its highways, for the purposes of construction, improvement, or repair, and their right to do so are commensurate with the duties imposed and the limits of the highways, and paramount to the rights of adjoining proprietors, and that presumptively that right was paid for when the land was subjected to the easement.

"If the foregoing propositions are true in relation to the officers and highways of a town, they are a fortiori true of the corporation and streets of the city of New Haven; for that city is not only a highway district, with all the powers possessed by towns, but by a special provision of its charter it is authorized to grade its streets. The power to grade is not simply the power to level one street so that its parts shall conform with each other, but the power to grade numbers of streets so that they shall conform to each other in a common grade. Such a construction of the charter is necessary to enable them to provide proper drainage and sewerage. No provision is made for the acquisition or disposition of material, and presumptively it was contemplated by the Legislature when they granted the power to grade, and by the board who assessed damages or benefits to the respondent when the street was laid out, that material excavated therein could, and probably would, be removed on some other street which required to be elevated to grade.

"We think therefore that the power and right of the city to remove the soil in question to Martin street or Derby avenue, where it is reasonably required, are undoubted; that the right is paramount to the rights of the respondent; that presumptively he has been paid for the soil which has been or is

to be taken, and has no just cause of complaint; and that, in attempting to remove that soil onto his own premises and deprive the city of it, after being apprised of their immediate intentions and necessities, and to the injury of the city, he was a wrongdoer, and should be restrained by injunction."

While one expression in that opinion would seem to indicate a dissent on the part of some member of the court, it is subsequently stated, at the end of the opinion, that the other judges concur. But, be that as it may, we think the opinion is sound; and, as it deals with conditions substantially similar to those existing in this state, we cite and quote from it in support of the conclusion we have reached upon the question now under consideration. That question, in so far as our own and the researches of the counsel representing the respective parties disclose, has not been decided in this state. In fact, the Connecticut case, and Deniston v. Clark, 125 Mass. 216, are the only cases which we have found which are directly in point. The Massachusetts case is to the same effect as the Connecticut case; but it appears to have been controlled, to some extent, by certain statutory provisions not involved in the case at bar, nor in the Connecticut case.

[4] 3. If it be contended that the doctrine announced in the Connecticut case is not applicable to that portion of this case which involves the right of the city of La Grange to remove gravel and soil from the streets abutting upon appellees' property for the purpose of improving a highway outside the limits of the city, we think a sufficient answer is that, under article 769 of the Revised Statutes of 1911, the city of La Grange was authorized to construct and maintain a street or roadway from the city limits to its waterworks plant, and that it had the same power and authority in reference to that street or roadway that it had as to any street within the corporate limits.

4. For the reasons above stated, the judgment of the trial court, in so far as it restrains the city of La Grange, its officers and employés, from removing gravel, soil, and similar material from North Line street, is reversed and here rendered for appellant; but in all other respects that judgment is affirmed.

Affirmed in part, and in part reversed and rendered.