**The STATE of Texas, Petitioner,**

v.

**Charles Lynn BROWNLOW and Marlene H. Brownlow, Respondents.**

No. 08–0551.

Supreme Court of Texas.

Argued Dec. 16, 2009.

Decided Aug. 27, 2010.

**650**

Greg W. Abbott, Attorney General of Texas, Kent C. Sullivan, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General,

Kristina Weber Silcocks, Office of Attorney General, Lisa Marie McClain, Office of the Attorney General, Transportation Division, Susan Desmarais Bonnen, Walter C. Brocato, Office of the Attorney General of Texas, Clarence Andrew Weber, First Assistant Attorney General, Austin, TX, for Petitioner.

William D. Noel, William Guy Arnot III, Houston, TX, for Respondent.

Charles Black McFarland, Joyce, McFarland + McFarland LLP, Houston, TX, for amicus curiae North Fort Bend Water Authority.

Justice JOHNSON delivered the opinion of the Court.

The State obtained an easement to construct a mitigation pond on Charles and Marlene Brownlow's property to collect water that would result from a highway expansion project. The State built the pond and used most of the excavated dirt for highway construction purposes in another location. The Brownlows sued the State for inverse condemnation as to the dirt it removed. The State asserted sovereign immunity from suit in a plea to the jurisdiction. The trial court granted that plea and dismissed the suit. The court of appeals reversed. We hold that the easement did not grant the State the right to use the excavated dirt for highway construction, the Brownlows' suit states a takings claim under the Texas Constitution, and the State does not have sovereign immunity from the suit. We affirm the court of appeals' judgment.

## I. Background

When the State initiated plans to widen State Highway 35 in Brazoria County, it calculated that the expanded highway required construction of a floodplain mitigation pond. The State elected to build the mitigation pond on part of a tract of land owned by Charles and Marlene Brownlow. It initiated condemnation proceedings by which it sought a fee estate in 12.146 acres of the Brownlows' land. Eventually the parties came to an agreement embodied in an Agreed Judgment by which the State received a permanent easement over the 12.146 acres. A recital in the judgment noted that the State sought the property "for highway purposes." The judgment then ordered that the easement was granted

> for the purpose of opening, constructing, and maintaining a detention facility in, over, and across the [Brownlows' land], together with the right, at all times of ingress, egress, and regress in[,] over[,] on and across such tract of land for the purpose of making additions to, improvements on, and repairs to said detention facility or any part thereof.

The property description and a construction plan was appended to the judgment.

In accordance with the construction plan for the pond, the State excavated in excess of 87,500 cubic meters of dirt from its easement. Despite the Brownlows' protests, the State removed most of the excavated dirt and used it in the Highway 35 expansion project, so the Brownlows sued for inverse condemnation. They claimed that the State unconstitutionally took the excavated dirt, entitling them to compensation. The State filed a plea to the jurisdiction. It argued that the Agreed Judgment gave it the right to use the dirt for highway construction purposes, it was within its rights to remove and use the dirt, and that it was immune from suit on the basis of sovereign immunity.

The trial court granted the State's plea and dismissed the case. The court of appeals reversed, holding that the dirt belonged to the Brownlows and they could maintain their takings suit. 251 S.W.3d

756, 762. We granted the State's petition for review.

The State argues that (1) the Agreed Judgment implicitly grants it the right to use all materials located in the easement to construct, repair, or improve roadways, (2) it is entitled to use the dirt for highway construction purposes because such use is reasonably necessary to ensure its full enjoyment of the easement, and (3) it has compensated the Brownlows in full. Thus, the State asserts the Brownlows do not possess a compensable interest in the excavated dirt and their takings claim is defective. The Brownlows argue that the express terms of the Agreed Judgment allow the easement to be used for "opening, constructing, and maintaining" the mitigation pond and the State cannot remove the dirt and use it for highway construction without paying additional compensation.

We agree with the Brownlows.[1]

## II. Discussion

### A. Constitutional Taking

 The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation." Tex. Const. art. I, § 17(a). An inverse condemnation may occur if, instead of initiating proceedings to condemn property through its powers of eminent domain, the government intentionally physically appropriates or otherwise unreasonably interferes with the owner's right to use and enjoy his or her property. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex.1992); *see Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001). The essence of an inverse condemnation proceeding is that the government has intentionally taken or unreasonably interfered with an owner's use of property and the property owner is attempting to recover compensation for the lost or impaired rights. *See City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex.1971). Sovereign immunity from suit does not protect the State from a claim under the takings clause. *State v. Holland*, 221 S.W.3d 639, 643 (Tex.2007).

 When the State acquires fee simple title to land through a condemnation proceeding, it acquires the land as well as appurtenances to and buildings on the land. *Brunson v. State*, 418 S.W.2d 504, 506 (Tex.1967) (quoting 3 Nichols On Eminent Domain § 9.2(5) (1965)). However, "[w]here only an easement is acquired[,] the owner retains title to the land and all that is ordinarily considered part of the land." *Id.* If only an easement is acquired, it is the State's burden to assure that the document granting the easement expressly addresses any "special arrangements or provisions in the easement taking." *Id.* at 507. The State's burden flows from the principle that "[a]n easement's express terms, interpreted according to their generally accepted meaning ... delineate the purposes for which the easement holder may use the property." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 701 (Tex.2002). An easement, unlike a possessory interest in land, "is a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Id.* at 700. An easement does not transfer rights by implication " 'except what is reasonably necessary' to fairly enjoy the rights expressly granted." *Id.* at 701 (quoting *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex.1974)). If the rule were otherwise, "easements would ef-

---

**1.** Although we conclude that the Brownlows' suit is not barred by sovereign immunity, the Brownlows must still prove the elements of their inverse condemnation claim.

fectively become possessory, rather than nonpossessory, land interests." *Id.* at 702. The emphasis placed on an easement's express terms serves the important public policy of promoting certainty in land transactions. *Id.*

## B. Application

■ In its plea to the jurisdiction, the State argued that the Brownlows failed to state a takings claim because the Agreed Judgment gave the State the right to use the dirt for highway construction purposes and the Brownlows did not have a compensable interest in the dirt the State removed. *See Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 644 (Tex. 2004) ("[T]o recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken."). The heart of the State's argument is that the Agreed Judgment expressly or implicitly gives it the right to remove the dirt excavated from the Brownlows' land and use it in highway construction, or that, in any event, use of the dirt is reasonably necessary for the State to fully enjoy the easement rights it was expressly granted. The Agreed Judgment, however, sets out the purposes of the easement as "opening, constructing, and maintaining" a mitigation pond; it does not grant the State rights to use the Brownlows' property for other purposes. *See Marcus Cable,* 90 S.W.3d at 701 ("[I]f a particular purpose is not provided for in the grant, a use pursuing that purpose is not allowed."). Using the dirt at a site remote from the Brownlows' property to construct a highway does not constitute a use related to either (1) opening, (2) constructing, or (3) maintaining a mitigation pond on the Brownlows' property. The purpose of a mitigation pond is to hold water.

Nor does a recital in the Agreed Judgment that the State first sought the Brownlows' property for "highway purposes" expressly or implicitly grant the State a right to use the dirt from the easement for highway construction. It was incumbent on the State to be sure the property rights it needed were acquired and encompassed within the language of the Agreed Judgment. *See Brunson,* 418 S.W.2d at 507 ("[I]t should be the burden of the condemning authority to have its judgment speak expressly of special arrangements or provisions in the easement taking."). The Agreed Judgment mentions "highway purposes" a single time, and that is in the recitals. In contrast, at five different points—twice in the granting clauses and three times in the recitals— the Agreed Judgement announces that the State is acquiring the easement for the purpose of "opening, constructing, and maintaining" a detention facility. Express decretal language in a judgment controls over recitals. *Magnolia Petroleum Co. v. Caswell,* 1 S.W.2d 597, 600 (Tex.Comm'n App.1928, judgm't adopted); *see Nelson v. Britt,* 241 S.W.3d 672, 676 (Tex.App.-Dallas 2007, no pet.) ("[W]here there appears to be a discrepancy between the judgment's recital and decretal paragraphs, a trial court's recitals, which precede the decretal portions of the judgment, do not determine the rights and interests of the parties."). Therefore, a single statement in the recitals that the State "sought and prayed for the acquisition, for highway purposes" is not clear enough to carry the State's burden. It does not unambiguously indicate that the State has the right to use the Brownlows' property for purposes unrelated to "opening, constructing, or maintaining" the mitigation pond generally, or more specifically, as highway construction material.

The State argues that under longstanding precedent, it has the right to use all

materials located in the easement for the purpose of constructing, repairing, or improving roadways. It argues this right tacitly inures to every condemned easement under *City of San Antonio v. Mullaly*, 33 S.W. 256 (Tex.Civ.App.-San Antonio 1895, no writ), and *City of La Grange v. Brown*, 161 S.W. 8 (Tex.Civ.App.-Austin 1913, writ ref'd). We disagree that the cited cases are controlling here.

In both *Mullaly* and *Brown* the plaintiffs claimed that the cities unlawfully took gravel, dirt, and materials from dedicated streets and adjacent properties while grading and maintaining their streets. *Mullaly*, 33 S.W. at 256; *Brown*, 161 S.W. at 10. The cities used that material for grading and maintaining streets in other areas. *Mullaly*, 33 S.W. at 256; *Brown*, 161 S.W. at 10. The courts in both cases upheld the cities' use of the material taken from the streets for constructing and grading streets elsewhere. The court in *Mullaly* held that the plaintiffs were not entitled to damages for materials the city took from above grade level in the street; it stated:

> Although the fee to a street may be in the adjoining lot owner, a city grading the street has the right to take from any portion of it the gravel or other material situated above the grade line, and use the same in improving or repairing that or any other of its streets, and without compensation to the owners of the property abutting on the portion of the street from whence the gravel or other material may be taken.

33 S.W. at 256.

In *Brown*, the plaintiffs sought to enjoin the city from taking gravel and materials for constructing and maintaining city streets elsewhere, including a road outside the city limits. 161 S.W. at 9. The trial court permanently enjoined the city from removing gravel from one street. *Id.* In

dissolving the injunction, the court of appeals stated:

> [T]he correct rule is that when a street, or other highway, has been legally established, the officer or governing body charged with the duty of opening up, constructing, and maintaining such street or highway has the right to remove soil, gravel, and other like material from one part of such street or highway to another portion of that or some other street or highway, for the purpose of constructing or maintaining the latter....
>
> . . .
>
> ... [As to] that portion of this case which involves the right of the city of La Grange to remove gravel and soil from the streets abutting upon appellees' property for the purpose of improving a highway outside the limits of the city, we think a sufficient answer is that, under article 769 of the Revised Statutes of 1911, the city of La Grange was authorized to construct and maintain a street or roadway from the city limits to its waterworks plant, and that it had the same power and authority in reference to that street or roadway that it had as to any street within the corporate limits.

*Id.* at 10, 12.

While the courts in *Mullaly* and *Brown* held that the cities could use materials removed from the streets during the grading process to construct and grade other roads, they were not considering materials removed from easements other than easements for city streets. *See Mullaly*, 33 S.W. at 256 ("[A] city *grading the street* has the right to take ... the gravel or other material situated above the grade line.") (emphasis added); *Brown*, 161 S.W. at 10 (holding that the city had the right to "remove soil, gravel, and other like material from one part of such *street or highway* ") (emphasis added). Grading,

constructing, and maintaining streets necessarily involves cutting, moving, and redistributing dirt and other materials because, as the court in *Brown* explained, street grading does not involve just the leveling of one street but conforming a number of streets to grade level for proper drainage and sewerage purposes. *Brown*, 161 S.W. at 11 (quoting *City of New Haven v. Sargent*, 38 Conn. 50, 55–56 (Conn.1871)). In contrast, the soil removed from the Brownlows' property was not removed as part of the grading process nor was the property in the highway right of way. The materials could be removed only for the specific purpose of opening, constructing, and maintaining the mitigation pond. *Brown* and *Mullaly* are not controlling.

Ultimately, the facts and issues before us are closer to those presented to this Court in *Brunson* than those presented to the courts of appeals in *Mullaly* and *Brown*. In *Brunson*, the State asserted its power of eminent domain and obtained a judgment granting it an easement "for highway right-of-way-purposes" across the Brunsons' property. 418 S.W.2d at 505. A trailer house, cabana, and other improvements were located on the easement. *Id.* After the condemnation judgment was signed, the Brunsons removed the improvements from their land. *Id.* The State sued the Brunsons for conversion and recovered possession of the improvements. *Id.* The Brunsons contended that they owned the improvements because the easement granted by the judgment in the condemnation action did not transfer title to the permanent improvements. This Court held that the Brunsons were correct:

> The easement ... carried with it the right of the State to remove any improvements on the land which would interfere with the full and beneficial use of the easement rights but did not take

away the subsisting ownership of the [Brunsons] in the improvements and [their] right to remove them.

> ....

> ... [T]he parties to an easement condemnation may agree upon the disposition of permanent improvements which may be involved and upon a corresponding basis for payment of compensation.... But it should be the burden of the condemning authority to have its judgment speak expressly of special arrangements or provisions in the easement taking; otherwise, the ownership of the landowner in improvements which are a part of the realty, and his right to remove them, will be enforced. Here the judgment is clear and unambiguous in its terms. It does no more than award the State the easement which it sought for right-of-way purposes over the land of Petitioners and fixes the amount of the damages therefor.

*Id.* at 506–07. Thus, we held that the State could move the improvements, but it did not own them because title to them was not granted by the condemnation suit judgment.

As to the matter before us, the State had the right to excavate the dirt from its easement on the Brownlows' property in order to open and construct the mitigation pond—the reason for its acquisition of the easement. Further, it could use the excavated dirt to maintain the pond. But the easement did not give the State the right to use the dirt for any other purposes—just as the easement in *Brunson* did not give the State more rights to the improvements than to remove those that interfered with its nonpossessory interest.

The State also argues that it was entitled to use the dirt to construct a highway embankment because doing so was necessary to fully enjoy its easement.

We agree that "an unlimited easement carries with it all rights as are reasonably necessary for enjoyment consistent with its intended use." *Coastal Indus. Water Auth. v. Celanese Corp. of Am.*, 592 S.W.2d 597, 601 (Tex.1979). But the rights reasonably necessary for full enjoyment of an easement are limited. They do not encompass rights foreign to the purpose for which the easement is granted. The servient estate holder retains these rights. *See Brunson*, 418 S.W.2d at 506 (" 'Where only an easement is acquired the owner retains title to the land and all that is ordinarily considered part of the land.' ") (quoting 3 NICHOLS ON EMINENT DOMAIN § 9.2(5) (1965)). By using the excavated dirt to build the highway embankment, the State exercised a right neither granted by the easement nor reasonably necessary for the State to fully enjoy the easement for the purpose it was granted.

Finally, the State urges that it does not owe the Brownlows further compensation for the excavated dirt because the Brownlows were fully compensated in the original condemnation proceeding. The State supports its position with two arguments.

First, it urges that when a tract of land is condemned for road construction purposes, a presumption arises that the damages allowed are for all lawful elements of damages that could reasonably have been foreseen and determined at the time of condemnation. It contends that because the construction plans attached to the Agreed Judgment stated the cut volume of the mitigation pond would be 87,-544 cubic meters, the Brownlows were on notice about how much dirt the State intended to excavate and use, and damages stemming from the removal of the dirt were reasonably foreseeable. In making this argument, the State relies on *City of La Grange v. Pieratt*, 142 Tex. 23, 175 S.W.2d 243 (1943). There, the State

sought to widen State Highway 71, which was also a La Grange city street. *Id.* at 244. The City and the State entered into a contract setting out details of the project and authorizing the State to perform the construction. *Id.* The construction plans called for using part of a tract of land owned by Pieratt, on which he operated a filling station. *Id.* After attempts to purchase the necessary part of Pieratt's property failed, the City initiated condemnation proceedings and obtained, in fee, the required parcel. *Id.* at 244–45. Several months after the condemnation proceedings were completed, Pieratt brought an inverse condemnation claim, alleging that the highway construction project had damaged his business and he was entitled to additional compensation for lost profits. *Id.* at 245. This Court held that Pieratt was not entitled to additional compensation because it was reasonably foreseeable at the time of the initial condemnation proceeding that he might suffer a loss of profits as a result of the road work:

> The work of improving this street was done by a contractor, substantially in accordance with the contract submitted to the City by the State Highway Department. This contract was attached to the ordinance authorizing the Mayor to enter into it on behalf of the City, and must have constituted a public record. There is no contention that there was any undue delay in performing the contract, or that the contractor did anything unusual, unreasonable, or negligent in its use of the street while improving it.
>
> . . . .
>
> ... [W]here a part of a tract of land is condemned for street or road purposes, and the owner claims consequential damages to the land left, on account of the loses of profits arising from an established business being conducted thereon, while the road or street im-

provements are in progress, such a claim may and should be presented at the condemnation proceeding, if it is of such a nature that it could reasonably have been foreseen and determined at the time.

*Id.* at 245–46.

*Pieratt* does not dictate the outcome in this case. Under the circumstances there, part of Pieratt's property was condemned for inclusion in the construction project and it was reasonably foreseeable from the publicly available project plans that construction activities could affect Pieratt's business located on the remainder of the property. In today's case, the State could not use an easement on the Brownlows' property for its intended purpose of a mitigation pond without excavation work taking place, but it could do so without removing and using the excavated dirt for highway construction. The work plans were attached to the condemnation judgment, and it was reasonably foreseeable that material would be excavated in order to both create and subsequently maintain a holding pond. But the State does not claim that the construction plans or the judgment granting its easement stated that the State would take title to the excavated dirt or incorporate it as a permanent part of the highway project off of the Brownlows' property. That the pond was made necessary by a highway construction project, did not make it reasonably foreseeable to the Brownlows that the excavated dirt would be removed and used to build the embankment when that purpose was not included in the language granting the easement. *See Marcus Cable,* 90 S.W.3d at 702 ("The emphasis our law places upon an easement's express terms serves important public policies by promoting certainty in land transactions.").

Second, the State argues that it fully compensated the Brownlows for the exca-

vated dirt when it acquired the easement because the value of the fee estate over which its easement runs and the value of an easement for highway purposes are substantially equivalent. It is true that sometimes the fee simple value of land and the value of an easement across that land may be the same. *See Thompson v. Janes,* 151 Tex. 495, 251 S.W.2d 953, 956 (1952) (explaining that when an "easement leaves [a] landowner with some beneficial use of the land . . . then the damages for condemnation thereof . . . will be less than the value of the fee," but when an easement deprives a landowner of all beneficial use of the land, "the landowner may recover as damages the market value of the land"). Whether the two values are the same is a matter of proof. *Id.* (noting that in condemnation proceedings where there is no substantial difference in value between the easement and fee, the damages sustained may be proven with evidence of the full value of the land taken). Here, the State and the Brownlows agreed on a price for the easement granted by the Agreed Judgment. Just as the judgment in *Brunson* was clear and unambiguous, the judgment in the condemnation suit between the State and the Brownlows is clear and unambiguous. *See Brunson,* 418 S.W.2d at 507. Regardless of what the State may have sought, the judgment awarded it an express easement for a particular purpose and fixed the amount of the damages for that easement. That judgment is final. It is not subject to collateral attack by claims that the price agreed upon was full value for the 12.146 acres, as opposed to an agreed price for the easement expressly granted. *See id.* (explaining that the condemnation judgment in *Brunson* was "not subject to impeachment or collateral attack" by the State; that is, the State could not sue the Brunsons for conversion, essentially collat-

erally attacking the condemnation judgment).

### III. Conclusion

The Brownlows' suit states a takings claim, and the State does not have sovereign immunity from it. We affirm the court of appeals' judgment. We remand to the trial court for further proceedings.

Justice GUZMAN did not participate in the decision.