

## NUMBER 13-11-00795-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

DOYLE WELLS, SEA OATS INVESTMENTS 1, L.P.,
AND QUIXOTE DUNES, INC.,                                    Appellants,

v.

TEXAS DEPARTMENT OF TRANSPORTATION,            Appellee.

### On appeal from the 138th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

This is an inverse condemnation case involving the removal of sand from a beach road by the Texas Department of Transportation and the subsequent use of that sand by the Town of South Padre Island, Texas.   Appellants Doyle Wells, Sea Oats Investments 1, L.P., and Quixote Dunes, Inc. challenge the granting of a plea to the jurisdiction in favor

of appellee the Department and the denial of appellants' interlocutory motion for summary judgment.[1] By one issue, appellants argue that the trial court erred in granting the Department's plea and denying appellants' motion because, as a matter of law and undisputed fact, appellants had a compensable interest in the sand on the beach road in question and the Department's removal of that sand for the use of the Town, without compensating appellants, was an illegal taking. We reverse and remand, in part, affirm, in part, and dismiss for want of jurisdiction, in part.

## I. Background

The following facts were taken from appellants' pleadings. Appellants are the owners of three pieces of beach-fronting property on South Padre Island that lie outside the Town. State Highway 100, a public roadway easement dedicated in the original subdivision plat that was recorded in 1956, crosses each of the tracts. Sand regularly accumulates on the roadway. In the past, the Department removed the sand from the roadway[2] and deposited the sand onto appellants' properties. In 2008, the Department began relocating the sand it removed from the roadway to the Town, where it was used to improve the public beaches.[3]

Appellants filed an inverse condemnation suit against the Department and the

---

[1] The Town also filed a plea to the jurisdiction but the record before us contains no ruling by the trial court on the Town's plea. In its order, the trial court granted only the Department's plea to the jurisdiction. The Town is not a party to this appeal.

[2] The parties dispute whether all of the sand removed by the Department was a hazard to vehicular traffic on the roadway. The parties also disagree as to the source of the sand. Appellants contend the sand blew from the dunes on their properties into the roadway. The Department contends that there is no way to ascertain with certainty from where the blowing sand originated.

[3] The Department presented evidence that the removal of the sand from the roadway easement for redistribution to the Town's beaches was done pursuant to various permits and agreements between the Town, the Department, and other agencies of the State of Texas as part of the State's Coastal Erosion Planning and Response Act program.

Town in March 2008, alleging that the Department's removal of the sand for use by the Town was an unlawful taking of appellants' private property without due process and without compensation and that they suffered actual and consequential damages as a result. *See* U.S. CONST. amends. V, XIV, § 1; TEX. CONST. art. I, §§ 17, 19. Appellants amended their petition in July 2009 to add a declaratory judgment claim. Specifically, appellants sought the following declarations:

(1) The sand appurtenant to the Roadway Easement is valuable property.

(2) Pursuant to the Roadway Easement, as to their respective tracts, Plaintiffs retain all right, title and interest (legal and equitable) in and to all sand appurtenant to the Roadway Easement.

(3) Pursuant to the Roadway Easement, Defendants did not acquire any right, title and/or interest (legal or equitable) in or to any of the sand appurtenant to the Roadway Easement.

(4) Defendants have not otherwise, including by operation of law, acquired any right, title and/or interest (legal or equitable) in or to any of the sand appurtenant to the Roadway Easement.

(5) In 2008 and 2009, Defendants did not comply with or attempt to comply with the provisions of TEX. PROP. CODE ANN. § 21.001, *et. seq.* prior to removing sand from Plaintiffs' properties.

(6) In 2008 and 2009, Defendants engaged in an unlawful taking of Plaintiffs' property in violation of U.S. CONST. amend. V and U.S CONST. amend. XIV, § 1.

(7) In 2008 and 2009, Defendants engaged in an unlawful taking of Plaintiffs' property in violation of TEX. CONST. art. 1, § 17 and TEX. CONST. art. 1, § 19.

(8) Plaintiffs have been damaged as a direct and proximate result of Defendants' unlawful taking of sand in 2008 and 2009.

Appellants prayed for attorney's fees and costs pursuant to the declaratory judgment act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). Finally, appellants

3

requested a temporary restraining order, temporary injunction, and permanent injunction to prevent the Department from resuming any removal of sand.

On the same day they amended their petition, appellants filed a motion for "interlocutory" summary judgment, arguing that: the "incontrovertible" facts established as a matter of law that appellants have a compensable interest in the property taken; the defendants are political subdivisions of the State of Texas; the defendants acted intentionally; the defendants took and damaged appellants' property; and the defendants took the property for public use. Appellants argued that their takings claim was therefore established as a matter of law and asked that the trial court grant their requested declaratory relief.[4] In their motion for summary judgment, appellants "reserve[d] their right to seek recovery of their damages and attorney's fees."

The Department responded to the motion for summary judgment and filed a plea to the jurisdiction, arguing that it was immune from appellants' suit because, based on the facts alleged in their petition, appellants could not establish their inverse condemnation suit as a matter of law. Specifically, the Department argued that appellants could not show a compensable interest because: the Department had broad rights to remove and use the materials in the public roadway easement; sand is not valued separately from the land; and appellants cannot show a vested interest in the sand because they cannot prove from where the sand originated. Finally, the Department argued, in relevant part, that it was immune from appellants' declaratory judgment claim because it presented no justiciable controversy as to the parties' rights that the declarations would actually resolve.

---

[4] In their interlocutory motion for summary judgment, appellants did not seek a ruling on their requests for injunctive relief.

4

After a hearing, the trial court denied appellants' motion for summary judgment and granted the Department's plea to the jurisdiction. This appeal followed.

## II. Discussion

By one issue, appellants challenge the trial court's order granting the Department's plea to the jurisdiction and denying appellants' motion for summary judgment. Appellants argue that their "fee" interest in the roadway is superior to the Department's "non[-]possessory" easement interest. Appellants then argue that, as a matter of law and undisputed fact, the removal of the sand from the roadway for improvement of the Town's beaches was an intentional act by the Department that took property, in which appellants had a compensable interest, for a public use without compensating appellants accordingly. Appellants argue that, in light of the foregoing, the trial court erred both in granting the Department's plea to the jurisdiction because the pleadings establish a valid inverse condemnation claim that waives the Department's sovereign immunity, and in denying appellants' motion for summary judgment because the undisputed facts establish appellants' takings claim as a matter of law. We first address the trial court's ruling on the Department's plea because the immunity issues raised therein are dispositive of this interlocutory, accelerated appeal. *See* TEX. R. APP. P. 47.1.

### A. Plea to the Jurisdiction

#### 1. Standard of Review and Applicable Law

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v.*

5

*Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.). Subject matter jurisdiction is a question of law; therefore, an appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226; *Morris*, 129 S.W.3d at 807.

The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam); *Morris*, 129 S.W.3d at 807. When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's pleadings, we accept as true all factual allegations in the pleadings to determine if the plaintiff has met its burden to plead facts sufficient to confer jurisdiction on the court. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Morris*, 129 S.W.3d at 807. We examine the pleader's intent and construe the pleadings in the plaintiff's favor. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Ramirez*, 74 S.W.3d at 867.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. After the defendant "asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Miranda*, 133 S.W.3d at 228. This standard "generally mirrors" that of a traditional motion for summary judgment. *Id.*

If "the jurisdictional challenge implicates the merits of the plaintiffs' cause of action

6

and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Id.* at 227.

> If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Id.* at 227–28.

"An action for inverse condemnation is the appropriate avenue of relief for a property owner whose property has been taken for public use without due process or without institution of proper condemnation proceedings, and who wishes to recover compensation for that loss." *Dahl ex rel. Dahl v. State*, 92 S.W.3d 856, 861 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex. 1971)) (other citations omitted). Sovereign immunity does not shield the State from an inverse condemnation action. *See id.*; *see also Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001) (citations omitted). However, "a plaintiff suing a governmental entity cannot create jurisdiction by stating a takings claim unless that claim is facially valid." *Bell v. City of Dallas*, 146 S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.). "When a plaintiff does not allege a valid inverse condemnation claim, . . . governmental immunity does apply and the trial court should grant a plea to the jurisdiction." *Id.* (citing *Gen. Servs. Comm'n*, 39 S.W.3d at 599; *Dahl*, 92 S.W.3d at 862). Whether particular facts are enough to state a valid takings claim is a question of law. *Gen. Servs. Comm'n*, 39 S.W.3d at 598 (citation omitted).

To establish a takings claim, a plaintiff must show that (1) the governmental entity

7

intentionally performed certain acts (2) that resulted in a "taking" of property (3) for public use. *Id.* To prove the foregoing, the plaintiff must be able to show that it has a compensable, or "vested," interest in the property that was taken. *See Brownlow v. State*, 251 S.W.3d 756, 760 (Tex. App.—Houston [14th Dist.] 2008) (citation omitted), *aff'd*, 319 S.W.3d 649 (Tex. 2010); *see also Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004) ("It is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken.").

## 2. Analysis

The Department's plea to the jurisdiction was based on two grounds: (1) appellants could not show a compensable interest in the sand because appellants cannot prove from where the sand originated so cannot show a vested interest in it, the Department has broad rights under the public roadway easement to remove and use the materials from the roadway, and the sand is not valued separately from the land; and (2) the Department was immune from appellants' declaratory judgment claim because there was no justiciable controversy between the parties that declarations would actually resolve and the claim was merely a recharacterization of appellants' takings claim intended to give appellants grounds for attorney's fees. The trial court did not specify on what basis it granted the plea, so we will review each asserted ground in turn.

### i. Compensable Interest

#### a. Whether Appellants Can Prove the Origins of the Sand on the Roadway

In its plea to the jurisdiction, the Department argued that appellants could not prove with certainty from where the sand that was removed by the Department originated.

8

As a matter of law, then, the Department argued that appellants could not state a valid takings claim because they could not prove a compensable interest in the sand.

When appellants alleged in their petition that the sand in the roadway had blown from their properties and the Department countered this allegation with the above argument, an issue of jurisdictional fact was raised that required evidence to establish it. *See City of Waco*, 298 S.W.3d at 622. But the Department presented no evidence on this point, and therefore never established this ground for its plea as a matter of law. *See id.* Under the record before the trial court, a fact issue remained on the origin of the sand that should have been left for the fact finder to resolve. *See Miranda*, 133 S.W.3d at 227–28; *see also Gen. Servs. Comm'n*, 39 S.W.3d at 598 (holding that whether particular facts are enough to state a takings claim is a question of law). As such, we conclude that this ground was not a proper basis for granting the Department's plea to the jurisdiction.

### b. The Department's Rights Under the Easement

The Department also argued that it had broad rights under the public roadway easement to remove and use the materials from the roadway in this case for purposes reasonably necessary to effectuate the purposes of the easement. In its response to the trial court and now on appeal, appellants argue that the Department's rights did not extend to using the sand for purposes other than those connected to street, highway, or other roadway repair or maintenance. We agree with appellants.

In *Brownlow v. State*, which was initially decided by the Fourteenth District Court of Appeals and later affirmed in an opinion by the Texas Supreme Court, the State initiated a condemnation proceeding, seeking to acquire an interest in approximately twelve acres of land owned by the Brownlows "for the opening, construction and maintenance of a

9

detention facility (a pond that would retain water) as part of the State's Highway 35 widening project." 251 S.W.3d at 759; *see also Brownlow*, 319 S.W.3d at 651. During the condemnation proceeding, the Brownlows and the State entered into an agreed judgment under which the Brownlows granted the State "a permanent easement in the property . . . for the purpose of opening, constructing, and maintaining a detention/mitigation facility in, over, and across the tract of land for the purpose of making additions to, improvements on, and repairs to said detention facility or an[y] part thereof." *Brownlow*, 251 S.W.3d at 759. In the process of constructing the detention facility, the State excavated and removed a substantial amount of dirt from the easement. *Id.* The State then used that dirt in a separate part of the highway widening project. *Id.* "The Brownlows protested that the excavated soil was not part of the permanent easement condemnation. They contend[ed] that as the fee simple owners of the 12.146 acres the soil belongs to them; hence the State's appropriation of the soil requires an additional condemnation with separate compensation." *Id.* The court of appeals and the Texas Supreme Court agreed with the Brownlows, holding that the agreed-to easement granted the State rights to open, construct, and maintain a mitigation pond as part of highway expansion project but did not give the State the right to take dirt from the easement site and use it for highway construction purposes, unrelated to opening, constructing, or maintaining the pond, in a different location. *Id.* at 762; *see also Brownlow*, 319 S.W.3d at 653. We find *Brownlow* to be instructive, as we will explain in more detail below.

But initially, we will address several arguments by the Department in which it contends that *Brownlow* is distinguishable or inapplicable, including that: the easement in *Brownlow* was an express, bargained-for easement whereas the easement in this case

10

is a dedicated general easement; the drainage easement involved in *Brownlow* differs from the public roadway easement in this case; the removal of the dirt in *Brownlow* was not reasonably necessary, unlike the removal of the sand from the roadway in this case; and "there was no question that the landowners in *Brownlow* owned the subsurface dirt" excavated and removed by the State, whereas here, appellants cannot prove they own the sand.

First, we note that, having already concluded that a fact issue remains as to the origin of the sand, we likewise are not persuaded by the Department's argument that the ownership of the sand is a distinguishing factor from *Brownlow*.

Next, we fail to see how the necessity of the removal of the dirt is a dispositive distinguishing factor. Assuming without deciding that removal of the sand from the roadway is necessary to effectuate the purpose of the easement in this case,[5] the question remains whether appellants have a right to be compensated for the use of that sand—that may or may not be theirs—in the Town's beach improvement project. In short, we are not persuaded that this distinguishing factor is relevant.

Finally, with regard to its arguments that *Brownlow*'s easement differed from the public roadway easement in this case in that it was express, bargained-for, and involved a drainage rather than a public roadway easement, the Department points to a line of cases dealing with public roadway easements and argues that such roadway easements are unique in the scope of control afforded to the government entity to maintain them. *See Pittman v. City of Amarillo*, 598 S.W.2d 941, 944 (Tex. Civ. App.—Amarillo 1980, writ ref'd n.r.e.) (citations omitted); *City of La Grange v. Brown*, 161 S.W. 8, 10 (Tex. Civ.

---

[5] The parties dispute to what extent removal of the sand is necessary to maintain a safe public roadway.

11

App.—Austin 1913, writ ref'd); *City of San Antonio v. Mullaly*, 33 S.W. 256, 256 (Tex. Civ. App.—San Antonio 1895, no writ). The Department argues that a public roadway easement conveys a possessory interest in the land that is "more similar to a fee interest than a typical easement." In other words, the Department's rights in the public roadway easement here were not governed by any express limiting language, like the express easement in *Brownlow*, and for this reason, the Department's use of materials found in the roadway was limited only by "the reasonableness of that use." We are not persuaded by this argument because the easement involved, and the Department's particular use of the sand in this case, present a situation distinguishable from the use of materials removed from the typical public roadway easements involved in the cases on which the Department relies.

In each case cited by the Department, the materials removed from the roadway were used for other street or highway purposes. Here, the sand removed from the roadway was not used to repair or maintain another roadway. What's more, it is arguable that the sand removed from the roadway in this case is not the sort of material that could be used to repair or maintain another roadway. These facts create a circumstance distinct from the foregoing public roadway easement cases—a circumstance not governed squarely by either *Brownlow* or the Department's cited cases.

Nonetheless, we are guided by *Brownlow* as it involved a situation where materials removed from an easement were used for a purpose other than the purpose for which the easement was granted. Here, the easement was dedicated for use as a public roadway. The Department was entitled to remove the sand as necessary to maintain safe and proper use of the roadway easement. *See Pittman*, 598 S.W.3d at 944; *see also*

12

*Brownlow*, 319 S.W.3d at 655 ("[T]he State had the right to excavate the dirt from its easement on the Brownlows' property in order to open and construct the mitigation pond—the reason for its acquisition of the easement."). And any material removed from the easement could have been used for other roadway purposes. *See Brownlow*, 319 S.W.3d at 656 ("We agree that an unlimited easement carries with it all rights as are reasonably necessary for enjoyment consistent with its intended use. But the rights reasonably necessary for full enjoyment of an easement are limited. *They do not encompass rights foreign to the purpose for which the easement is granted*." (emphasis added) (internal quotation omitted)); *see also Pittman*, 598 S.W.2d at 944 ("When a road or street is dedicated to the public, the governmental entity exercising jurisdiction over the street ordinarily acquires only an easement in the street . . . [that] necessarily carries with it the right to use and control as much of the surface or subsurface of the street *as may be reasonably needed for street purposes*." (emphasis added) (internal citations omitted)). But if the Department used the sand for non-roadway purposes—i.e., for improvement of the Town's public beaches, as alleged by appellants—it exceeded the scope of the easement in this case.

In sum, appellants alleged facts showing that they retained a compensable interest in the sand because the Department used it for purposes other than those allowed by the roadway easement. Therefore, this ground was not a proper basis for granting the Department's plea to the jurisdiction.

### c. Whether the Sand Has Value Separate From the Land

Citing several courts of appeals cases, the Department also argued that appellants could not prove that the sand had value separate from the land. *See Coastal Indus.*

13

*Water Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co.*, 523 S.W.2d 462, 470–71 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) ("It is clear that sand, gravel and other material should not be valued separate and apart from the land, and when the value of such materials can be properly shown it should be restricted to the market value of such materials [i]n place as they lie in their natural state in the land, and not after they have been severed from the land and thereby converted into a commodity." (quoting *Reilly v. State*, 382 S.W.2d 116, 121 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.)); *Brazos River Auth. v. Gilliam*, 429 S.W.2d 949, 952 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e) (same). However, in *Brownlow*, the supreme court held that the plaintiffs stated a valid takings claim and that the trial court had jurisdiction over the claim where it was alleged that the State used dirt excavated from its detention pond easement for another, unrelated project. 319 S.W.3d at 653, 658. The implication of the holding was that the plaintiffs had a compensable interest in the dirt that may require further compensation by the State. In short, after *Brownlow*, we are not persuaded by the cases cited by the Department. By alleging that sand that may have originated on appellants' properties was removed by the Department and used for purposes unrelated to the roadway easement, appellants alleged facts showing a compensable interest and therefore stated a takings claim—the law cited by the Department does not negate the trial court's jurisdiction on this basis. The trial court erred if it granted the Department's plea on the basis that the sand had no value apart from the land.

### ii. Justiciability of Appellants' Declaratory Judgment Claim

Finally, the Department argued that the trial court lacked jurisdiction over appellants' declaratory judgment claim because it presented no justiciable controversy as

14

to the parties' rights that the declarations would actually resolve. In other words, the declaratory judgment claim was seeking the same relief as would be established by the takings claim already alleged.

A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties that will be resolved by the declaration sought. *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 240 (Tex. 2011) (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)). A declaration will not resolve the rights and statuses of the parties if, in the same action, a different, enforceable legal remedy is sought on an identical basis; in other words, if the declaration adds nothing to what would be gained in a final judgment on the other enforceable remedy, the declaration serves no purpose and therefore presents no justiciable controversy. *See Universal Printing Co., Inc. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 258–59 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Barnett v. City of Colleyville*, 737 S.W.2d 603, 606–607 (Tex. App.—Fort Worth 1987, writ denied)); *see also City of Dallas*, 347 S.W.3d at 240 (reversing the denial of a plea to the jurisdiction, in part, on the basis that the plaintiff's declaratory judgment claim presented no justiciable controversy).

Here, the declarations sought by appellants are identical to the elements appellants must prove to recover on their inverse condemnation claim. *See Gen. Servs. Comm'n*, 39 S.W.3d at 598; *see also Brownlow*, 251 S.W.3d 760. As such, the declarations sought by appellant would add nothing to the relief they already sought by their takings claim, and their declaratory judgment claim therefore presented no justiciable controversy that invoked the trial court's jurisdiction. *See City of Dallas*, 347

15

S.W.3d at 240; *Universal Printing Co., Inc.*, 73 S.W.3d at 296. The trial court did not err in granting the Department's plea to the jurisdiction on appellants' declaratory judgment claim.

### iii. Summary

Having determined that, with regard to whether appellants had a compensable interest in the sand removed an used by the Department, appellants alleged sufficient facts and the Department failed to produce the necessary evidence to disprove certain jurisdictional facts, we sustain appellants' issue as to that basis for the trial court's granting of the plea to the jurisdiction. *See Ramirez*, 74 S.W.3d at 867; *see also Miranda*, 133 S.W.3d at 227–28. But having determined that appellants' declaratory judgment claim presented no justiciable controversy, we overrule their appellate issue insofar as the plea to the jurisdiction was granted on that claim.

## B. Appellant's Motion for Summary Judgment

By their appellate issue, appellants also argue that the trial court erred in denying their motion for summary judgment, which asserted that the undisputed facts established their takings claim as a matter of law. Appellants ask that this Court reverse that ruling and render judgment as a matter of law on appellants' takings claim. However, we do not have jurisdiction to review the interlocutory denial of a motion for summary judgment.[6]

*Hines v. Comm'n for Lawyer Discipline*, 28 S.W.3d 697, 700 (Tex. App.—Corpus Christi

---

[6] There are limited exceptions to this rule. A party may appeal a denial of a motion for summary judgment (1) when both parties move for summary judgment, and the trial court grants one motion but denies the other, resulting in a final judgment, *see Tex. Mun. Power Agency v. Pub. Utility Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007), and (2) for certain types of cases listed in chapter 51 of the civil practice and remedies code, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(1)–(11) (West Supp. 2011). The denial of appellants' motion for summary judgment on the merits of their takings claim does not fall within these exceptions.

16

2000, no pet.) (citing *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Highlands Mgmt. Co. v. First Interstate Bank of Tex., N.A.*, 956 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1997, pet. denied)). We overrule appellants' issue to the extent it complains of the trial court's denial of their motion for summary judgment.

## III. Conclusion

We reverse the order of the trial court insofar as it dismissed appellants' inverse condemnation claim and remand for further proceedings in accordance with this opinion. We affirm the order of the trial court insofar as it dismissed appellants' declaratory judgment claim. We dismiss appellants' appeal of the trial court's denial of their motion for summary judgment for lack of jurisdiction.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
27th day of June, 2013.