**CITY OF HOUSTON, Appellant,**

v.

**Wallace Ray MACK, Jr. and Beryl B. Mack, Appellees.**

No. 01–09–00427–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 22, 2009.

Cora Garcia, Houston, TX, for Appellant.

Bruce D. Mosier, Mosier & McEnrue, P.C., J. Marcus Hill, Hill & Hill, Attorneys at Law, Houston, TX, Appellees.

Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

## OPINION

JIM SHARP, Justice.

Wallace Ray Mack Jr. and Beryl B. Mack (the "Macks") filed suit against the City of Houston, claiming that a 2006 amendment to the City's Code of Ordinances regulating development in floodways was an unconstitutional taking of their property, which is located in the floodway. The ordinance at issue was amended again in 2008, before the original filing of this litigation, and the Macks do not complain of any injury after the September 1 effective date of the 2008 amendment. The City filed a plea to the jurisdiction asserting, among other things, that the Macks' claims were not ripe and that the trial court thus lacked jurisdiction to hear the case. The trial court denied the

City's plea to the jurisdiction, and this interlocutory appeal followed.[1]

We affirm.

## Background

The Macks own a 5.2796 acre tract of land in Harris County, Texas. The property has two residential single family homes located on it and was acquired by the Macks in 1992. The majority of the property is vacant land. The Macks allege in their Original Petition that they sought to sell the property to "persons desiring to develop the property and, in fact, had entered into a listing agreement with a local Real Estate Broker, but, because of the amendment to Chapter 19 of the City of Houston Code of Ordinances ... were unable to sell the property."

The Macks argue that prior to October 1, 2006, the City of Houston's Code of Ordinances ("Code") restricted development within the floodway of the City but allowed the City Engineer to issue permits notwithstanding those restrictions. After Tropical Storm Allison, the Federal Emergency Management Agency ("FEMA") undertook a study of the impact of the storm on some of the bayous and drainage channels in the City of Houston. As a result of this study, maps known as Flood Insurance Rate Maps ("FIRMs") were prepared in 2006 and formally adopted on June 18, 2007. Before the creation of the FIRMs, the Macks property was not located in a floodway. The FIRMs, however, for the

first time, placed the Macks' property in a floodway. Effective October 1, 2006, the City amended the Code to further restrict development in the floodway. Houston, Tex., Ordinance 2006–894 (Aug. 30, 2006). Under the 2006 amendment, Code section 19–43(a)(2) prohibited the issuance of a permit for "development to be located in any floodway, ... if that development provides for ... [n]ew construction, additions to existing structures, or substantial improvement of any structure within the floodway...." *Id.* § 26. Code section 19–43(d) allowed the City Engineer to issue a permit, even if a permit application was denied under section 19–43(a)(2), so long as the general appeals board found and determined in writing that the improvement was insubstantial and would not increase flood levels during occurrence of the base flood nor impede the flow of floodwaters. *Id.*

Code section 19–20, as amended in 2006, provided in relevant part that "[v]ariances shall not be granted for development within any floodway if the development cannot meet the requirements of section 19–43(b) of this Code." *Id.* § 18. Code section 19–43(b) permitted building in a floodway only if "necessary to protect the health, safety and welfare of the general public." *Id.*

On July 23, 2008, the Code was again amended to allow the City Engineer greater discretion in issuing permits for the development of vacant land within the floodways, if certain criteria are met.[2] *See*

---

1. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon 2007).

2. Section 19–43(d) now reads:

(d) While the community acknowledges the increased risks associated with development on vacant land in the floodway, the city engineer shall issue a permit for such development in a floodway, or any special flood hazard area for which a floodway has not been

designated, if the city engineer determines that:

(1) The bottom of the lowest horizontal structural member of the structure will be elevated at least 18 inches above the base flood level;

(2) The foundation system for the structure will be pier and beam construction;

(3) The applicant has submitted an engineering analysis acceptable to the city engineer, certified by a professional engineer

Houston, Tex., Ordinance 2008–658, § 10 (July 23, 2008) (codified at HOUSTON, TEX. CODE OF ORDINANCES § 19–43 (2009), *available at* http://www.municode.com/resources/gateway.asp?pid=10123 & sid=43). The July 23, 2008 ordinance amendments became effective September 1, 2008. *Id.* § 14.

The Macks filed suit against the City on September 30, 2008, alleging that after FEMA approved the new FIRMs, its property was within a newly delineated floodway. The Macks contend that, in light of that designation, the City's 2006 amendments to section 19–43(a) of the Code prohibited the issuance of building permits to them for "new construction, additions to existing structures or substantial improvement of any structure" on their property. In addition, the Macks contend that the Code, as it applied until September 1, 2008, prohibited the City Engineer from issuing any building permits for such construction. The Macks allege that during that period of time, the City's ordinance deprived them of the use, benefit, and enjoyment of their property, amounting to a taking without just compensation.

The City's answer alleges that the Macks failed to exhaust the administrative remedies allowed by the Code. The City provided an affidavit from the City Engineer attesting that the Macks had not yet applied for a development permit for their property, that no such permit had been yet denied to them, and that no appeal had been taken from such a denial. The City also filed a plea to the jurisdiction contending that, although the Macks alleged that they intended to sell the property to someone who would want to develop it, the Macks did not allege any specific improvement or sale that was impacted by the 2006 amendment. The City further alleged that, because the Macks had not filed an application for a permit, nor had they yet appealed such a denial as allowed by the Code, their claims were not ripe and the trial court lacked jurisdiction to consider their petition. Finally, the City alleged that the 2008 amendment mooted the Macks' claims as to the 2006 ordinance because the 2008 amendment significantly loosened the previous ordinance's restrictions on development in the floodway.

In their response, the Macks did not dispute the fact that they did not apply to the City for building or development permits before they filed suit. However, the Macks claimed that, under the plain language of the 2006 ordinance, their intended use for the property was expressly forbidden and the Code allowed no discretion or variances under such circumstances. Therefore, the Macks argued, their application for a permit would have been futile. Furthermore, the Macks alleged that the enactment of the 2008 amendment was irrelevant because they had already sustained damages under the prior ordinance. After a hearing, the trial court denied the City's plea to the jurisdiction.

## Standard of Review

 In its sole issue, the City challenges the trial court's decision to deny its

---

licensed in the State of Texas, that demonstrates that the applicant will provide floodway conveyance offset volume at a rate defined by the city engineer. The floodway conveyance offset volume may be provided on the applicant's site or at an off-site mitigation facility located within one-quarter mile upstream and in the same watershed as the site. If the applicant chooses to provide off-site mitigation, the applicant shall also comply with the requirements of section 19–17(c).

HOUSTON, TEX.CODE OF ORDINANCES § 19–43 (2009), *available at* http://www.municode.com/resources/gateway.asp?pid=10123 & sid=43.

plea to the jurisdiction. A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). The standard of review of an order granting a plea to the jurisdiction based on governmental immunity is de novo. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). It is the plaintiff's burden to allege facts that affirmatively establish the trial court's subject matter jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). In determining whether the plaintiff has met this burden, we look to the allegations in the plaintiff's pleadings, accept them as true, and construe them in favor of the plaintiff. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). While we must construe the allegations in favor of the plaintiff, we are not bound by legal conclusions. *Tex. Natural Res. & Conservation Comm'n v. White,* 13 S.W.3d 819, 822 (Tex.App.-Fort Worth 2000), *rev'd on other grounds,* 46 S.W.3d 864 (Tex.2001); *Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.,* 972 S.W.2d 140, 143 (Tex.App.-Dallas 1998, no pet.); *Salazar v. Morales,* 900 S.W.2d 929, 932 (Tex.App.-Austin 1995, no pet.). If the pleadings are insufficient, the court should afford an opportunity to replead if the defects are potentially curable, but may dismiss if the pleadings affirmatively negate the existence of jurisdiction. *Miranda,* 133 S.W.3d at 226–27.

If the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Id.* at 227. If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdic-tion, and the fact issue will be resolved by the fact-finder. But, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 227–28. In reviewing the evidence presented in support of the plea to the jurisdiction, we take as true all evidence favorable to the nonmovant. *Id.* at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* "[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).... By requiring the [governmental unit] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to put on their case simply to establish jurisdiction." *Id.* (internal quotations and citation omitted); *accord Dallas County v. Wadley,* 168 S.W.3d 373, 377 (Tex.App.-Dallas 2005, pet. denied) (on a plea to the jurisdiction, "the burden is on the government to meet the summary judgment standard of proof").

We remain mindful of the Texas Supreme Court's admonishment that, although the plaintiff's claims may form the context against which the jurisdictional plea is determined, the plea generally "should be decided without delving into the merits of the case." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). In general, "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Id.* at 554.

### Analysis

The Texas Constitution provides that no "person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being

made." TEX. CONST. art. I, § 17; *Sheffield Dev. Co., Inc. v. City of Glenn Heights,* 140 S.W.3d 660, 669 (Tex.2004). Similarly, the Just Compensation Clause of the Fifth Amendment provides that "private property" shall not "be taken for public use without just compensation." U.S. CONST. amend. V. The Just Compensation Clause has been construed to apply to the states by operation of the Fourteenth Amendment. *Mayhew,* 964 S.W.2d at 933.

Inverse condemnation occurs when property is taken for public use without proper condemnation proceedings and the property owner attempts to recover compensation for that taking. *City of Dallas v. Blanton,* 200 S.W.3d 266, 271 (Tex. App.-Dallas 2006, no pet.). To state a cause of action for inverse condemnation, a plaintiff must allege: (1) an intentional governmental act; (2) that resulted in his property being taken, damaged, or destroyed; (3) for public use. *Id.* Although the Texas Constitution's adequate compensation provision is worded differently than the Just Compensation Clause of the Fifth Amendment to the United States Constitution, the Texas Supreme Court has described them as comparable and generally looks to federal cases for guidance in takings cases. *See Hallco Tex., Inc. v. McMullen County,* 221 S.W.3d 50, 56 (Tex. 2006); *Sheffield,* 140 S.W.3d at 669.

### Are the Macks' Takings Claims Ripe?

Ripeness is an element of subject matter jurisdiction and, as such, is subject to de novo review. *Mayhew* at 928–29. We look to the experience of the federal courts in determining the ripeness of constitutional challenges to land-use regulations. *Id.*

A regulatory-takings claim may challenge a land-use restriction on its face or as applied to particular property. *Keystone Bituminous Coal Ass'n v. De-*

*Benedictis,* 480 U.S. 470, 494, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987) (recognizing "an important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation"); *City of Corpus Christi v. Pub. Util. Comm'n,* 51 S.W.3d 231, 247 (Tex.2001). A facial challenge is ripe when the restriction is imposed, but an as-applied claim is not ripe until the regulatory authority has made a final decision regarding the application of the regulation to the property. *Compare Yee v. City of Escondido,* 503 U.S. 519, 533–34, 112 S.Ct. 1522, 1531–32, 118 L.Ed.2d 153 (1992), *with Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). The Macks claim their challenge is a facial challenge in which ripeness is not an issue. However, because the Macks do not allege that the sections of the Code at issue do not "substantially advance a legitimate state interest" no matter how they are applied, we construe the Macks' claim as complaining that the Code, as applied to their property, amounts to an unconstitutional regulatory taking. *See Yee,* 503 U.S. at 533–34, 112 S.Ct. at 1531–32.

The City asserts that the trial court does not have subject matter jurisdiction because the Macks' takings claims are not ripe for adjudication. Ripeness is a threshold issue that implicates subject matter jurisdiction. *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex. 1998). While the jurisdictional issue of standing focuses on who may bring an action, ripeness focuses on when that action may be brought. *Waco Indep. School Dist. v. Gibson,* 22 S.W.3d 849, 852 (Tex. 2000).

Ripeness concerns whether, at the time a lawsuit is brought, the facts have developed sufficiently such that an injury has occurred or is likely to occur, rather than being contingent or remote. *Patterson,* 971 S.W.2d at 442. To establish that a claim is ripe based on an injury that is likely to occur, the plaintiff must demonstrate that the injury is imminent, direct, and immediate, and not merely remote, conjectural, or hypothetical. *Gibson,* 22 S.W.3d at 852. By focusing on the concreteness of injury, the ripeness doctrine allows a court to avoid premature adjudication and issuance of advisory opinions. *Id.*

On appeal, the City contends that the Macks have not alleged that they suffered a "concrete injury." However, in their petition, the Macks allege they have been deprived of the "use benefit and enjoyment of the Property" and that the property's value has been drastically reduced because "after the date of the amendment, Plaintiffs could neither construct any improvement in or upon the Property nor sell the Property to anyone who desired to construct any improvements in or upon the Property." Moreover, the Macks allege that they had entered into a listing agreement with a local real estate broker in furtherance of their intention of selling the property for development.

Relying on *Waco Independent School District v. Gibson,* the City alleges,

> The Macks' takings claim—apparently based on some future hope of improving or selling their Property—is precisely the type of hypothetical, contingent claim that the ripeness doctrine is designed to preclude ... [T]he only injury

that the Macks have asserted is some vague future hope of improving or selling the Property. Although the Macks assert that they intended to sell their Property to someone who desired to develop it, the Macks do not allege any specific improvement or sale that was impacted or impeded by the 2006 Amendment.

*See* 22 S.W.3d at 852 ("A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass.").

The record does not support the City's contention. We are mindful that, in addition to viewing the Macks' allegations in their favor, we must take as true all evidence favorable to the Macks and "indulge every reasonable inference and resolve any doubts in [their] favor." *See Miranda,* 133 S.W.3d at 228.

The Macks alleged that their property was in a Houston floodway. They also alleged that the 2006 amendments deprived them of the "use, benefit, and enjoyment" of the property because they could not sell it to anyone who desired "to construct any improvements in or upon the property."[3] Considering these allegations as we must, we conclude that the Macks have alleged a "concrete injury."

We recognize that in *City of Houston v. HS Tejas, Ltd.,* we held that the plaintiff had not alleged a concrete injury arising from the enactment of the same flood-control provisions at issue here. 305 S.W.3d 178, 184–85 (Tex.App.-Houston [1st Dist.] 2009, no. pet. h.). However, *HS Tejas* is distinguishable from the instant case in that the plaintiff in *HS Tejas* pro-

---

3. We emphasize that our analysis and ultimate holding in this interlocutory appeal are limited to the jurisdictional issue. We intend no comment on the ultimate merits of the Macks' takings claims, including whether the Macks have actually suffered a taking of their property. We determine only whether the Macks' claims are ripe.

vided no allegation, as do the Macks, of entering into an agreement with a broker for the sale of the property or taking any type of additional step toward the improvement or sale of the property.

■ The City also contends that the Macks' claims are not ripe because they did not apply for a building permit, seek a variance, or request any other type of regulatory relief from the ordinance's restrictions. The City relies on the legal principle that a regulatory takings claim is not ripe until there is a final decision by the regulatory agency regarding the application of the regulations to the property at issue. Citing *Mayhew*, the City contends that a determination whether the Macks' property has been taken or impaired cannot be made until the City has denied the Macks' application for a permit or a variance. *See Mayhew*, 964 S.W.2d at 929–30.

The Macks respond that applying for a permit or seeking a variance would have been futile because, under the subject Code provisions, the City or its agencies had no discretion to issue a building permit or variance for the Property. The Macks correctly point out that this Court has held that the futility exception applies to the 2006 flood-control provisions at issue here. *See City of Houston v. Noonan*, No. 01–08–01030–CV, 2009 WL 1424608, at *5 (Tex.App.-Houston [1st Dist.] May 21, 2009, no pet.) (mem. op.); *City of Houston v. O'Fiel*, No. 01–08–00242–CV, 2009 WL 214350, at *5 (Tex.App.-Houston [1st Dist.] Jan. 29, 2009, pet. filed) (mem. op.).

As in this case, the plaintiffs in *Noonan* and *O'Fiel* alleged that the 2006 flood-control provisions prohibited them from constructing a residential improvement on property located in a Houston floodway. *Noonan*, 2009 WL 1424608, at *1–2; *O'Fiel*, 2009 WL 214350, at *1–2. We held that the plaintiffs' claims were ripe even though they had not sought or obtained a

final decision regarding whether a permit or variance would be issued for the construction of residential improvements on the subject property. *See Noonan*, 2009 WL 1424608, at *5; *O'Fiel*, 2009 WL 214350, at *5–6. We recognized that, because no City agency had discretion to issue a permit or a variance under the 2006 flood-control provisions, it would be futile for a landowner to apply for a building permit or to seek a variance to construct a residential improvement on property located within a Houston floodway. *See Noonan*, 2009 WL 1424608, at *5; *O'Fiel*, 2009 WL 214350, at *5.

Our holdings in *O'Fiel* and *Noonan* control here. There are no meaningful distinctions between the claims alleged here and those alleged in *Noonan* and *O'Fiel*. Thus, for the reasons stated in *Noonan* and *O'Fiel*, we conclude that the Macks' takings claims are ripe even though they did not formally apply for a building permit or seek a variance regarding the subject property. *See Noonan*, 2009 WL 1424608, at *5; *O'Fiel*, 2009 WL 214350, at *5; *see also City of Houston v. Norcini*, —— S.W.3d ——, —— (Tex.App.-Houston [1st Dist.] 2009) (mem. op.) (holding takings claim ripe where claimant alleged concrete plan to sell property to builder, had taken steps to sell property, but could not under 2006 amendment).

Lastly, the City contends that the Macks' claims are "incapable of ripening" because the City Council amended Code section 19–43 in 2008. The 2008 amendment provides the City Engineer with some discretion to issue building permits for development of vacant land within floodways, if certain criteria are satisfied. *See* HOUSTON, TEX.CODE OF ORDINANCES HOUSTON, TEX., ORDINANCE 2008–658 (July 23, 2008) (codified at HOUSTON, TEX.CODE OF ORDINANCES § 19–43 (2009)).

■ The City made this same argument in *Noonan*. *See* 2009 WL 1424608, at *6. We explained that, because Noonan's claims under the 2006 amendment were ripe when he filed his suit, the 2008 amendment was irrelevant. *See id.* Similarly, the Macks' claims under the 2006 amendment were ripe when they filed suit in September 2008. Thus, the 2008 amendment is "irrelevant" to the ripening of the Macks' claims arising from the 2006 amendment.[4] *See id.*

### Conclusion

After viewing their allegations favorably, accepting their evidence as true, indulging every reasonable inference from their evidence, and resolving any doubts in their favor, we conclude that the Macks have alleged a concrete injury. *See Miranda*, 133 S.W.3d at 228. In addition, we conclude that the Macks were not required to apply for a building permit or to seek a variance for their claims to ripen. Given the provisions of the 2006 amendment, seeking a permit or variance would have been futile. *See Noonan*, 2009 WL 1424608, at *5; *O'Fiel*, 2009 WL 214350, at *5. Finally, the 2008 amendment has no relevance to whether the Macks' claims under the 2006 amendment are ripe. *See Noonan*, 2009 WL 1424608, at *6. We conclude that the Macks' claims were ripe when they filed suit. *See id.* We hold that the trial court properly denied the City's jurisdictional challenge.

We overrule the City's sole issue. We affirm the trial court's order denying the City's plea to the jurisdiction.

---

4. The City also asserts that the 2008 amendment "essentially mooted" the Macks' claims. "A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex.2005). In their brief, the Macks aver that the "damage was caused by the amendment of the ordinance on October 1, 2006, and continued, unabated, until the City of Houston once again amended its ordinance on September 1, 2008...." They assert, "The latter amendment may have mitigated future damage to the Macks but could not have rectified the injuries it had already caused." *Id.* We agree that a live controversy still exists regarding whether the Macks suffered a compensable injury as a result of the enactment of the 2006 amendment, irrespective of the 2008 amendment.