

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00040-CV

CITY OF GRAPEVINE AND GRAPEVINE BOARD OF ADJUSTMENT    APPELLANTS

V.

CBS OUTDOOR, INC.    APPELLEE

----------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION ON REHEARING[1]

----------

Appellee CBS Outdoor, Inc. filed a motion for rehearing and a motion for en banc consideration of our opinion issued May 2, 2013. We deny both motions, but we withdraw the previous opinion and judgment and substitute the following.

---

[1]*See* Tex. R. App. P. 47.4.

# I. INTRODUCTION

Appellants City of Grapevine and Grapevine Board of Adjustment (collectively, the City) appeal an order denying their plea to the jurisdiction. We will affirm in part and reverse and render in part.

# II. FACTUAL AND PROCEDURAL BACKGROUND

CBS operates an off-premise, nonconforming advertising billboard sign located adjacent to State Highway 114 in Grapevine.[2]  In September 2010, as part of a project to expand State Highway 114, the State of Texas filed a petition for condemnation against several landowners to acquire real property near the highway.  Although the pole supporting CBS's sign was not located on the real property sought to be condemned by the State, the sign aerially encroached over part of the property to be condemned by approximately four feet.  The State therefore included CBS as a defendant in its suit and alleged that it was entitled to condemn not only fee title to the real property, but also "title to all that certain two outdoor advertising signs [one being CBS's sign] . . . situated partially" on the real property.

CBS's response to the City's plea to the jurisdiction included the affidavit of Sejin Brooks, an Assistant Attorney General assigned to the Transportation

---

[2]A nonconforming status exists when "a use or structure, which does not conform to the regulations prescribed for the district in which such use or structure is located, was in existence and lawfully constructed, located, and operating on the effective date of this ordinance and has since been in regular and continuous use."  Grapevine, Tex., Comprehensive Zoning Ordinance § 43.B.1 (2010).

2

Division, whose signature block appeared on the State's petition for condemnation. Notwithstanding the State's petition to condemn title to CBS's sign, Brooks, referencing several Texas Department of Transportation (TxDOT) regulations, stated in his affidavit that TxDOT would have been "satisfied" if CBS merely "eliminate[d]" the four-foot aerial encroachment by either (1) shifting the face of the sign so that it no longer encroached or (2) reducing the size of the sign face by the amount of the overhang.

CBS sent a letter to the City dated October 25, 2010, explaining that "[a]s a result of the overhang, the State must either acquire the entire Sign structure, or CBS must conduct maintenance to the Sign so that the face no longer encroaches on the easement." Acknowledging that the City's "regulations prohibit the construction, erection, remodeling, alteration, relocation, or expansion of a sign unless a zoning permit has been obtained in accordance with Section 60 of the Zoning Ordinance," CBS requested permission to shift the face of the sign—one of the actions authorized by TxDOT's regulations—to eliminate the aerial encroachment.[3]

On November 11, 2010, the special commissioners appointed by the trial court to assess the damages caused by the State's condemnation of the property near State Highway 114 awarded the defendants in that suit approximately $2.3 million. The commissioners did not, however, award CBS any damages for the

---

[3]The October 25, 2010 letter also stated, "The State supports this request and recognizes that the jurisdiction to grant this request is with the City of Grapevine not the State."

3

advertising sign. CBS therefore filed objections to the commissioners' award, asserted a counterclaim for inverse condemnation based on the State's taking of the sign, and requested an award of "the full amount of just and adequate compensation to which they are entitled" under the property code and the state and federal constitutions.

In response to CBS's October 25, 2010 letter, the Assistant City Attorney notified CBS in a letter dated December 8, 2010, that the advertising sign was "currently nonconforming under the applicable City codes" and could not "be moved, altered, or adjusted under the current conditions." The City denied CBS's request to shift the face of the sign.

On January 7, 2011, the State's project manager notified CBS that the aerial encroachment had to be removed by February 1, 2011. Thereafter, according to CBS, it "eliminated the overhang by simply removing the four foot panel on the end of the sign face overhanging the right of way." By letter dated February 22, 2011, the City informed CBS that the sign had been "illegally modified" in violation of the City's zoning ordinances and the December 8, 2010 letter and ordered CBS to remove the sign.[4] On March 8, 2011, CBS filed an

---

[4]The City cited section 60A, which provides that "[n]o sign, except for signs listed in Section 60, shall be painted, constructed, erected, remodeled, relocated, or expanded until a zoning permit for such sign has been obtained." Grapevine, Tex., Comprehensive Zoning Ordinance § 60A (2011). The City also cited section 43.D.2., which prohibits a nonconforming use from being remodeled, and section 43.D.3.b., which provides that "[t]he violation of any of the provisions of this Ordinance or violation of any Ordinance of the City of Grapevine with respect to a nonconforming use shall terminate immediately the right to operate such nonconforming use." *Id.* § 43.D.3.b.

appeal of the February 22, 2011 letter with the Grapevine Board of Adjustment and, alternatively, sought a variance. After a hearing, the Board denied CBS's appeal and request for a variance, reasoning in part as follows:

> On December 8, 2010, the Building Official issued a written determination that the billboard could not be "moved, altered, or adjusted." As you affirmed during the hearing, that determination was never challenged. Contrary to this determination, the billboard was in fact altered through the removal of a four foot section of the billboard. No permit was sought or obtained for the work on the billboard.

CBS later sued the City and the Board for judicial review of the Board's decision, injunctive relief, inverse condemnation in violation of the state and federal constitutions, violations of due process, declaratory relief, and attorneys' fees. The City filed a plea to the jurisdiction challenging each of CBS's claims, and the trial court denied the plea in its entirety. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2012).

### III. STANDARD OF REVIEW AND GOVERNMENTAL IMMUNITY

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). If a court lacks subject matter jurisdiction in a particular case, then it lacks authority to decide that case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (reasoning that subject matter jurisdiction is essential to the authority of a court to decide a case). The plaintiff has the burden to plead facts affirmatively showing

that the trial court has jurisdiction. *Id.* at 446. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). If the evidence creates a fact issue, then it is for the factfinder to decide. *Id.* In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Governmental immunity involves two issues: whether the State has consented to suit and whether the State has accepted liability. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). Immunity from suit is jurisdictional and bars suit unless the State expressly waives immunity or consents to the suit. *Id.*; *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The City enjoys immunity from suit unless it has been waived. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

## IV. JUDICIAL REVIEW

The City argues in its first issue that the trial court lacks jurisdiction over CBS's claim for judicial review because CBS failed to exhaust its administrative

6

remedies by not appealing the City's December 8, 2010 decision advising CBS that the advertising sign could not be "moved, altered, or adjusted." The City acknowledges that CBS filed an appeal of the February 22, 2011 decision to the Board within the time required by the applicable zoning ordinance and that CBS filed its claim for judicial review in this lawsuit within the time allotted by the local government code. However, it contends that the February 22, 2011 decision "simply enforces" the earlier December 8, 2010 decision and that CBS's appeal actually involves a challenge to the December 8, 2010 decision. According to the City, because CBS should have appealed to the Board by December 23, 2010—within fifteen days of the December 8, 2010 decision—but instead appealed to the Board on March 8, 2011—two and a half months late—its judicial review claim is barred.

CBS responds that the trial court has jurisdiction over its claim for judicial review because it seeks to appeal the February 22, 2011 decision, not the December 8, 2010 decision. CBS explains that it "did not go forward with its plan to shift the face" of the sign because it chose "not to question" but instead "to accept" the December 8, 2010 decision. However, "[i]n contrast with its willingness to comply with the City's refusal in December of 2010 to allow CBS to shift the face of the sign," CBS contends that it was "not willing to follow, without challenge," the February 22, 2011 decision, which it timely appealed. CBS also argues that shifting the face of the sign was "different" than "simply removing a panel."

7

The City replies that CBS's argument—that it was not required to appeal the December 8, 2010 decision because it abided by that decision and did not shift the face of the sign—relies upon an "artificially restrictive characterization" of the December 8, 2010 decision, which did not simply deny CBS's request to shift the face of the sign but notified CBS that the sign could not be "moved, altered, or adjusted" at all.

Zoning ordinance section 68G provides that an appeal to the Board may be taken by "any person aggrieved" by "any decision of the building inspector or other administrative officer of the City relative to the Zoning Ordinance" and that the appeal "shall be taken within fifteen (15) days after the date of the decision of the building inspector or other administrative officer has been rendered." *See* Grapevine, Tex., Comprehensive Zoning Ordinance § 68G. A person aggrieved by a decision of the Board may then file a verified petition for judicial review of the decision in a district court within ten days after the decision is filed in the Board's office. *See* Tex. Local Gov't Code Ann. § 211.011 (West 2008).

Administrative remedies available under local government code section 211 generally must be exhausted before a party may seek judicial review of a determination made by an administrative official. *Lazarides v. Farris*, 367 S.W.3d 788, 798 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *City of Paris v. Abbott*, 360 S.W.3d 567, 572–73 (Tex. App.—Texarkana 2011, pet. denied); *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 249–50 (Tex. App.—San Antonio 2006, pet. denied). The requirement of administrative exhaustion

8

compels a party to "pursue all available remedies within the administrative process before seeking judicial relief."  *Lazarides*, 367 S.W.3d at 798 (quoting *Larry Koch, Inc. v. Tex. Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 839 (Tex. App.—Austin 2001, pet. denied)).  Unless the party has exhausted all administrative remedies, the trial court lacks subject matter jurisdiction.  *City of Paris*, 360 S.W.3d at 572; *see* Tex. Gov't Code Ann. § 311.034 (West 2013) ("Statutory prerequisites to a suit . . . are jurisdictional requirements in all suits against a governmental entity.").

CBS's argument centers primarily upon the part of zoning ordinance section 68G that states that an appeal to the Board may be taken by "any person *aggrieved . . .* by any decision of the building inspector or other administrative officer of the City relative to the Zoning Ordinance."  Grapevine, Tex., Comprehensive Zoning Ordinance § 68G (emphasis added).  In an effort to demonstrate that it was not aggrieved by the City's December 8, 2010 decision— and that it did not have to pursue an appeal of that decision—CBS says that it "accept[ed]" and "cho[]se not to question" and exhibited a "willingness to comply" with the City's December 8, 2010 decision simply because it did not *shift the face of the sign* to eliminate the aerial encroachment—the specific relief that it had requested in its October 25, 2010 letter.  But the decision to not shift the face of the sign—and to instead eliminate the aerial encroachment by some other means not expressly requested—does not mean that CBS was not required to appeal the City's December 8, 2010 decision.  This is because the December 8, 2010

9

decision did not merely prohibit CBS from shifting the face of the sign; it notified CBS that it could not move, alter, or adjust the sign.

In our original memorandum opinion, after the language immediately above, we proceeded to describe the December 8, 2010 decision as a "sweeping directive that, viewed objectively, prohibited CBS from taking virtually any legal action whatsoever with the sign." *See City of Grapevine v. CBS Outdoor, Inc.*, No. 02-12-00040-CV, 2013 WL 1830375, at *4 (Tex. App.—Fort Worth May 2, 2013, no pet.) (mem. op.). CBS takes issue with that statement in its motion for rehearing, arguing that "[t]he genesis of the Panel's error appears to be a misconception that the City has the power to issue any directive it chooses, without regard to the scope of the directive or the lack of legal authority." That was not the court's analysis and reasoning. The point is that when CBS specifically requested to shift the face of the sign, the City did not specifically deny the request by responding, "The City denies your request to shift the face of the sign." Instead, the City specifically stated—in what were unquestionably much broader terms—that CBS could not move, alter, or adjust the sign. CBS did not challenge the propriety of, or the authority underlying, that decision. Now that the City has ordered CBS to remove the sign, CBS seeks to question and challenge the City's December 8, 2010 decision under the guise of an appeal from the City's February 22, 2011 decision ordering the sign's removal. This it cannot do.

Therefore, that CBS ultimately removed part of the sign instead of shifted the face of the sign and chose to appeal to the Board the decision enforcing the consequence for failing to comply with the City's directive (removal of the sign) instead of the actual decision prohibiting CBS from moving, altering, or adjusting the sign (the December 8, 2010 letter) is not dispositive of whether CBS was aggrieved by the decision announced in the December 8, 2010 letter.

Referencing numerous zoning ordinances, CBS contends that "the City's arguments reflect a misinterpretation of its own ordinances." However, as CBS itself acknowledges, these arguments are relevant to the merits of its claim for judicial review, not the question of whether CBS exhausted its administrative remedies. We therefore do not address them.

Similarly, citing the standard of review, CBS argues that we must affirm the trial court's order denying the City's plea to the jurisdiction because the "facts surrounding this issue were . . . strongly disputed between the parties," including whether removal of the four-foot panel required a building permit or violated any of the City's ordinances, whether the sign was properly classified as a nonconforming use or a nonconforming structure, and whether the exception under zoning ordinance section 43.I applied. CBS repeats this argument in its motion for rehearing. But none of these purported factual disputes are relevant to the jurisdictional issue of whether CBS properly exhausted its administrative remedies; they too are relevant to only the merits of the claim for judicial review.

CBS suggests that it was not required to appeal the December 8, 2010 decision because that decision was not an order issued by a "building inspector or other administrative officer," as required by zoning ordinance section 68G. We disagree. Scott Williams, the "Developmental Services Director/Building Official" for the City, testified before the Board at CBS's appeal of the February 22, 2011 letter, "I responded to CBS on December 8th, through our attorney, Boyle & Lowry, that no, the sign could not be altered or -- or remodeled."

Because CBS failed to pursue an appeal to the Board of the City's December 8, 2010 decision that CBS could not move, alter, or adjust the sign, CBS failed to exhaust its administrative remedies, and the trial court lacks jurisdiction over the claim for judicial review. We sustain the City's first issue.

## V. INJUNCTIVE RELIEF

The City argues in its second issue that the trial court lacks jurisdiction over CBS's claim for injunctive relief because the trial court has no jurisdiction over CBS's claim for judicial review. CBS directs us to its arguments under the first issue and responds that the trial court has jurisdiction over the injunctive relief claim because it has jurisdiction over the judicial review claim. The local government code provides that, in addition to filing a petition for judicial review of the Board's decision, "on application and after notice to the board the court may grant a restraining order if due cause is shown." Tex. Local Gov't Code Ann. § 211.011(c). Because the trial court lacks jurisdiction to consider CBS's claim

for judicial review, it lacks jurisdiction to determine whether due cause exists to issue injunctive relief. *See id.* We sustain the City's second issue.

## VI. INVERSE CONDEMNATION

The City argues in its third issue that the trial court lacks jurisdiction over CBS's inverse condemnation claim because (1) CBS failed to exhaust its administrative remedies, and (2) the State condemned the sign, thereby precluding the City from being sued for inverse condemnation of the sign. Neither argument is persuasive.

Generally, governmental entities compensate property owners before appropriating their property, either by paying a mutually agreed price or by paying the value as determined in a statutory condemnation proceeding. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). However, if these entities appropriate property without paying adequate compensation, the property owner may recover the resulting damages through an inverse condemnation claim. *City of Dallas v. Stewart*, 361 S.W.3d 562, 567 (Tex. 2012). A cause of action for inverse condemnation requires (1) an intentional governmental act (2) that resulted in the plaintiff's property being taken, damaged, or destroyed (3) for public use. *City of Houston v. Mack*, 312 S.W.3d 855, 861 (Tex. App.— Houston [1st Dist.] 2009, no pet.).

The City directs us to a single sentence from the supreme court's recent opinion in *City of Dallas*—"[A] party asserting a taking must first exhaust its administrative remedies and comply with jurisdictional prerequisites for suit"—

13

and argues, without much explanation, that CBS's inverse condemnation claim is barred because it failed to exhaust its administrative remedies. While we certainly held in the analysis of the City's first issue that CBS failed to exhaust its administrative remedies, that alone does not control whether the trial court has jurisdiction over CBS's inverse condemnation claim because *Stewart'*s analysis is not so limited. After stating that a party asserting a taking must first exhaust its administrative remedies, the supreme court elaborated that "a litigant must avail itself of statutory remedies *that may moot its takings claim*, rather than directly institute a separate proceeding asserting such a claim." *Id.* (citing *City of Dallas v. VSC*, 347 S.W.3d 231, 234–37 (Tex. 2011)) (emphasis added). Referencing *VSC*, in which the supreme court determined that VSC could not assert a constitutional takings claim because it had bypassed a remedial statutory scheme that could have afforded it relief, the court explained, "We held that 'if a remedial procedure *might have obviated the need for a takings suit*, then the property simply had not, prior to the procedure's use, been taken *without just compensation.*'" *Id.* (emphasis partially added).

Here, the City has argued, and we have held, that the trial court lacks jurisdiction over CBS's claim for judicial review because CBS failed to pursue an appeal to the Board of the City's December 8, 2010 decision that CBS could not move, alter, or adjust the sign. But for purposes of preserving its right to assert an inverse condemnation claim in the district court, CBS did not have to avail itself of an appeal to the Board of the City's December 8, 2010 decision because

14

that remedial procedure could not have possibly mooted CBS's inverse condemnation claim, which is based upon the City's February 22, 2011 letter instructing CBS to remove the sign.  In other words, we cannot conclude that an appeal by CBS of the City's December 8, 2010 decision might have obviated CBS's need to file this inverse condemnation claim because the City's December 8, 2010 decision did not order CBS to remove the sign, and CBS does not base its takings claim on anything other than the City's February 22, 2011 instruction to remove the sign.  We overrule this part of the City's third issue.

The City additionally argues that the trial court lacks jurisdiction over CBS's inverse condemnation claim because the State condemned the sign.  It directs us to the following language in *Brownlow v. State*:

> A property owner cannot have a valid inverse condemnation claim if the property at issue *was* the subject of a previous, proper condemnation or sovereign domain action.  If the appellant's pleadings demonstrate that his inverse condemnation claim covers either the identical property lawfully *condemned* by the State, or an interest not recognized as separate from that property, he has no valid inverse condemnation claim, and sovereign immunity bars the suit.

251 S.W.3d 756, 760 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 319 S.W.3d 649 (Tex. 2010) (emphasis added) (citation removed).  In *Brownlow*, after the State filed a petition to condemn twelve acres of land owned by the Brownlows to construct and maintain a facility to retain water, the parties signed an agreed judgment granting the State an easement on the property to construct and maintain the facility.  *Id.* at 759.  When the State began to remove the dirt at the site and use it at another project, the Brownlows protested that the excavated soil

15

was not part of the easement and, ultimately, sued the State for inverse condemnation, arguing that the soil required an additional condemnation with separate compensation. *Id.* The trial court granted the State's plea to the jurisdiction, and on appeal, the State argued that the Brownlows' inverse condemnation claim was barred by sovereign immunity because the soil was properly disposed of in the previous condemnation proceeding. *Id.* at 758. The court of appeals disagreed, reasoning that "the soil removed for the purpose of constructing the detention facility was neither subject to the initial condemnation proceedings nor included within the Agreed Judgment." *Id.* at 762. Therefore, the soil remained the property of the Brownlows, and the State waived its sovereign immunity regarding the takings claim. *Id.*

Here, the evidence viewed in the light most favorable to CBS demonstrates that although the State included CBS and the sign in its suit to condemn property located adjacent to State Highway 114—because the sign aerially encroached over the property to be condemned by approximately four feet—TxDOT's regulations permitted CBS to eliminate the encroachment by either shifting the face of the sign so that it no longer encroached or reducing the size of the sign face by the amount of the overhang. According to Brooks, the State's attorney, CBS, "with TxDOT's approval," reduced the face of the sign by four feet, "thereby eliminating the encroachment." Brooks testified before the Board that "[a]s soon as that right-of-way line was cut, *we had no more interest in it.*" [Emphasis added.] The record does not contain a final judgment in the

16

State's condemnation suit awarding the sign to the State. Accordingly, in light of the state of the record, the plea evidence does not support the City's contention that the State owns the sign. *Brownlow* is therefore inapposite, and we overrule the remainder of the City's third issue.

## VII. DUE PROCESS

The City argues in its fourth issue that the trial court erred by denying the plea to the jurisdiction challenging CBS's claim for "Violation of Due Process." It specifically contends that CBS's due process claim is barred because the "Local Government Code and the City's Zoning Ordinances afford property owners meaningful relief to rectify any constitutional violations" and that CBS "failed to avail themselves of those safeguards." Although we held that CBS failed to exhaust its administrative remedies regarding its judicial review claim, there exists a right distinctly different from the right to judicial review given by statute—one in which a party may challenge an administrative action in district court on the ground that the action unconstitutionally deprived him of a vested property right. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000). Sovereign immunity does not bar a suit under this "inherent right of judicial review." *KEM Tex., Ltd. v. Tex. Dep't of Transp.*, No. 03-08-00468-CV, 2009 WL 1811102, at *6 (Tex. App.—Austin June 26, 2009, no pet.) (mem. op.).

17

Nonetheless, CBS has not alleged that it has an inherent right to judicial review based upon a vested property right,[5] nor do we think it could if we remanded this claim to the trial court to afford CBS an opportunity to replead because "[p]roperty owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made." *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 616 (Tex. App.—Texarkana 2008, no pet.); *Murmur Corp. v. Bd. of Adjustment of City of Dallas*, 718 S.W.2d 790, 794 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Thus, while CBS may have a vested property right in its sign, it does not have a vested property right in maintaining the sign as a nonconforming use under the City's relevant zoning ordinances. *See Morrow v. Truckload Fireworks, Inc.*, 230 S.W.3d 232, 239–40 (Tex. App.—Eastland 2007, pet. dism'd) (discussing vested property rights).

We hold that the trial court lacks jurisdiction over CBS's claim for violation of due process, and we sustain the City's fourth issue.

## VIII. DECLARATORY JUDGMENT

In its fifth issue, the City argues that CBS failed to allege a claim for declaratory relief for which the City's immunity from suit has been waived.

---

[5]CBS alleged that "reducing the sign face by 4 feet from 48 feet to 44 feet long in order to comply with TxDOT's mandate to clear its right of way is not an 'expansion,' 'enlargement,' or any of the other activities expressly prohibited by Grapevine's Regulations" and that in the absence of a determination consistent with zoning ordinance 43.G.2 and local government code sections 214.002 and 216.013(b), the order to remove the sign was illegal. CBS also alleged that several of the City's zoning ordinances are vague.

The Uniform Declaratory Judgments Act (UDJA) contains a limited waiver of immunity from suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2008). Immunity is waived when a party seeks a declaration that an ordinance or statute is invalid or when a party seeks a declaration construing a city ordinance. *City of N. Richland Hills v. Home Town Urban Partners, Ltd.*, 340 S.W.3d 900, 911 (Tex. App.—Fort Worth 2011, no pet.). However, as a general rule, an action for declaratory relief will not be entertained if there is a pending action between the same parties that might resolve the exact issues raised in the declaratory judgment. *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 100 S.W.3d 510, 517 (Tex. App.—Austin 2003, pet. denied); *see Tex. Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970).

CBS's pleading for declaratory relief cited language from civil practice and remedies code section 37.004(a) and stated,

> CBS asks the Court to construe the pertinent sections of the City Code, including sections 43 and 60, and the following sections of the Local Government Code, in relation to CBS' cause of action for inverse condemnation: Sections 213.002, 216.003, 216.004 and 216.013. In doing so, *the Court should declare that Defendants are not entitled to force the uncompensated removal of CBS' Sign*. [Emphasis added.]

CBS does not seek a declaration that any ordinance is invalid, and to the extent that it seeks a declaration regarding the construction of the City's ordinances and the local government code, it does so only to attack the validity of the Board's decision denying CBS's appeal of the City's February 22, 2011 decision or to supplement its inverse condemnation claim. CBS's claim for declaratory relief is,

19

therefore, nothing more than a restated claim for judicial review of the Board's decision, inverse condemnation, or both. The trial court has jurisdiction of CBS's inverse condemnation claim and will consider the "uncompensated removal" of the sign in that context. Moreover, it is of no consequence that the trial court lacks jurisdiction over CBS's claim for judicial review; the procedures set out in the City's ordinances and local government code section 211 identify the appropriate means by which to challenge the Board's decision. *See* Tex. Local Gov't Code Ann. § 211.011; Grapevine, Tex., Comprehensive Zoning Ordinance § 68G. CBS may not circumvent that administrative remedy scheme by seeking the exact same relief via a declaratory judgment claim. *See Allen v. City of Baytown*, No. 01-09-00914-CV, 2011 WL 3820963, at *3–5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.). Accordingly, we sustain the City's fifth issue.

## IX. ATTORNEYS' FEES

In its sixth issue, the City argues that the trial court lacks jurisdiction over CBS's claim for attorneys' fees because the trial court has no jurisdiction over any statutory claim supporting an award of attorneys' fees. Attorneys' fees are recoverable only if authorized by statute or by a contract between the parties. *Intercont'l Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 & n.7 (Tex. 2009). There is no contract between CBS and the City, and to the extent that attorneys' fees are recoverable under the UDJA, local government code section 211.011, or both, there is no basis to support an award of attorneys' fees

20

under those authorities because the trial court lacks jurisdiction over CBS's corresponding claims.  We sustain the City's sixth issue.

## X. CONCLUSION

Having sustained the City's first, second, fourth, fifth, and sixth issues, we reverse that portion of the trial court's order denying the City's plea to the jurisdiction as to CBS's claims for judicial review, injunctive relief, due process, declaratory relief, and attorneys' fees and render judgment that CBS take nothing on those claims.  Having overruled the City's third issue, we affirm that portion of the trial court's order denying the City's plea as to CBS's inverse condemnation claim.

BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED:  September 19, 2013

21